58 A.3d 1234

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
MOSES A. BREWSTER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 19, 2012—Decided February 7, 2013.

388

Before Judges ASHRAFI, HAYDEN and LISA.

*Vincent J. Sanzone, Jr.,* attorney for appellant.

*Jeffrey S. Chiesa,* Attorney General, attorney for respondent (*Frank Muroski,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

ASHRAFI, J.A.D.

Seeking to avoid deportation some twelve years after he was convicted of drug charges, defendant Moses Brewster appeals from January 2011 orders denying his petition for post-conviction relief (PCR). He claims he was deprived of effective assistance of counsel when he pleaded guilty in 1998 because his attorney did not advise him he would be deported. On both factual and legal grounds, we reject defendant's contentions and affirm denial of his PCR petition.

## I.

Defendant is not a United States citizen. He was born and raised in Jamaica and came to the United States in 1988 at the age of twenty-three. He had no criminal record before his 1997 arrest for possession of about five pounds of marijuana. A Passaic County grand jury indicted him on charges including third-degree possession of marijuana with intent to distribute in a school zone. *N.J.S.A.* 2C:35-7. If convicted of that charge, defendant faced a minimum mandatory term of three years imprisonment and a maximum state prison term of five years. *Ibid.; N.J.S.A.* 2C:43-6(a)(3).

With the advice of counsel, defendant accepted a plea offer in accordance with *N.J.S.A.* 2C:35–12 that would avoid the mandatory period of incarceration and instead recommend a sentence of probation with 364 days to be served in the county jail. At his plea hearing on June 1, 1998, defendant admitted he was to deliver the five pounds of marijuana to a person in New York City, for which task he expected to be paid.

The judge at the plea hearing did not question defendant about the possibility that he might be deported. The risk of deportation, however, was addressed in a written plea form signed by defendant as part of the record of his guilty plea. Question 17 on the plea form asked: Do you understand that if you are not a United States citizen or national, you may be deported by virtue of your plea of guilty? Defendant answered yes. In open court, defendant acknowledged that he had discussed the questions and answers on the plea form with his attorney and had enough time to do so, that the answers were accurate, and that he had no questions to ask the judge about the contents of the plea form.

On September 25, 1998, the judge sentenced defendant to two years of probation with 364 days to be served in the county jail. Defendant did not file a direct appeal. He served the sentence.

In April 2010, almost twelve years after his plea and conviction, defendant was arrested by federal authorities and detained in Arizona on a complaint for deportation based on his conviction in New Jersey. He retained the services of an attorney and successfully moved in federal court to stay the deportation proceedings pending his effort to vacate the 1998 conviction. He filed his PCR petition in this State on August 18, 2010. The same judge who had taken defendant's plea and sentenced him denied the PCR petition by order and a statement of reasons dated January 7, 2011. Subsequently, by order and letter dated January 25, 2011, the judge denied defendant's motion for reconsideration.

On appeal, defendant makes the following arguments:

*POINT I*
DEFENDANT'S CONVICTION MUST BE VACATED BECAUSE THE DEFENDANT DID NOT ENTER HIS GUILTY PLEA KNOWINGLY AND INTELLIGENTLY, AND HIS ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT ADVISING THE DEFENDANT THAT HE WOULD BE DEPORTED BY PLEADING GUILTY TO A DRUG OFFENSE.
*POINT II*
THE TRIAL COURT ERRED IN NOT SCHEDULING AN EVIDENTIARY HEARING OR GRANT[ING] THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF.

We are not persuaded by these arguments. Defendant's submissions did not make a prima facie factual showing of ineffective assistance of counsel leading to his guilty plea. In addition, an evidentiary hearing would not affect the untimely filing of his PCR petition.

## II.

### A.

■ The general standards by which a defendant must prove ineffective assistance of counsel are familiar, and we will not repeat them here. *See Strickland v. Washington,* 466 *U.S.* 668, 689, 694, 104 *S.Ct.* 2052, 2065, 2068, 80 *L.Ed.*2d 674, 694, 698 (1984); *State v. Loftin,* 191 *N.J.* 172, 198, 922 *A.*2d 1210 (2007); *State v. Fritz,* 105 *N.J.* 42, 52, 519 *A.*2d 336 (1987). If a claim of ineffective assistance follows a guilty plea, the defendant must prove counsel's constitutionally deficient representation and also "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 *U.S.* 52, 59, 106 *S.Ct.* 366, 370, 88 *L.Ed.*2d 203, 210 (1985); *accord State v. DiFrisco,* 137 *N.J.* 434, 457, 645 *A.*2d 734 (1994).

In *State v. Nunez–Valdez,* 200 *N.J.* 129, 143, 975 *A.*2d 418 (2009), our State Supreme Court held that a defendant can show ineffective assistance of counsel by proving that his guilty plea resulted from "inaccurate information from counsel concerning the deportation consequences of his plea." The Court's focus was on "false or misleading information" from counsel as establishing the violation of the defendant's constitutional rights. *Id.* at 138, 975 *A.*2d 418.

Later, in *Padilla v. Kentucky,* 559 *U.S.* 356, ——, ——, 130 *S.Ct.* 1473, 1483, 1486, 176 *L.Ed.*2d 284, 295, 299 (2010), the United States Supreme Court held that counsel's failure to give any advice whatsoever about deportation might also be deficient performance in violation of a defendant's constitutional rights. In *Padilla,* as in this case, the defendant was a long-time legal resident of the United States who pleaded guilty, in 2002, to transporting a large quantity of marijuana. *Padilla v. Commonwealth,* 381 *S.W.*3d 322, 324 (Ky.Ct.App.2012). While serving a five-year prison sentence, a federal detainer was lodged for his deportation. *Ibid.* The defendant sought relief in state court alleging that his defense attorney had advised him he "did not have to worry about [his] immigration status since he had been in the country so long." *Padilla, supra,* 559 *U.S.* at ——, 130 *S.Ct.* at 1477–78, 176 *L.Ed.*2d at 289–90. The United States Supreme Court stated that federal immigration law, 8 *U.S.C.A.* § 1227(a)(2)(B)(i), made the defendant's deportation "presumptively mandatory, and his counsel's advice was incorrect." *Padilla, supra,* 559 *U.S.* at ——, 130 *S.Ct.* at 1483, 176 *L.Ed.*2d at 295. The attorney's misinformation, alongside the almost certain deportation, satisfied the first prong of the *Strickland* test for ineffective assistance of counsel. *Id.* at ——, 130 *S.Ct.* at 1483, 176 *L.Ed.*2d at 296.

The Court also added that counsel's constitutional duty is not limited to avoiding incorrect advice. Counsel has an affirmative duty to inform a defendant when a guilty plea will result in deportation, at least where the relevant law pertaining to mandatory deportation is "succinct, clear, and explicit." *Id.* at ——, 130 *S.Ct.* at 1483, 176 *L.Ed.*2d at 295.[1]

In *State v. Gaitan,* 209 *N.J.* 339, 37 *A.*3d 1089 (2012), our State Supreme Court decided the "difficult" issue of whether *Padilla*

---

[1] In an opinion concurring in the Court's judgment, Justice Alito and Chief Justice Roberts disputed that defense counsel has a duty to elaborate on the immigration consequences that might attend a guilty plea. They concluded that

shall apply retroactively to convictions beyond direct appeal. The Court stated: "[W]ell prior to [the] holding in *Nunez–Valdez,* this Court had taken the position that a defendant's guilty plea is not vulnerable because neither the court nor counsel warned the defendant about the deportation consequences." *Id.* at 361, 37 *A.*3d 1089. The Court then held that *Padilla's* imposition of an affirmative duty to advise on deportation consequences is a "new" constitutional rule that does not apply to defendants who have exhausted their direct appeals. *Id.* at 373, 37 *A.*3d 1089. But the Court also held that its own 2009 decision in *Nunez–Valdez,* in contrast to *Padilla,* was not a new rule of constitutional law. Therefore, claims of counsel's wrong advice about deportation consequences will be addressed retroactively on collateral review of past convictions. *Id.* at 375, 37 *A.*3d 1089.

▮ In this case, the retroactivity holding of *Gaitan* means that *Padilla's* "new" constitutional rule does not apply to defendant's twelve-year-old conviction.[2] Only if defendant's attorney affirmatively gave incorrect advice about the deportation consequences of

---

a criminal defense attorney satisfies his duty to provide effective assistance if he avoids giving unreasonably incorrect immigration advice, advises a non-citizen defendant that a guilty plea "may have adverse immigration consequences," and informs the defendant that further advice can be obtained from an immigration attorney. *Id.* at ——, 130 *S.Ct.* at 1487, 176 *L.Ed.*2d at 299 (Alito, J., concurring in the judgment). Justices Scalia and Thomas dissented and would have held that the Sixth Amendment right to counsel in a criminal case does not protect the defendant's interest in obtaining "sound advice about the collateral consequences of conviction." *Id.* at ——, 130 *S.Ct.* at 1494, 176 *L.Ed.*2d at 308 (Scalia, J., dissenting).

2 In April 2012, the United States Supreme Court granted certiorari in *Chaidez v. United States,* —— *U.S.* ——, 132 *S.Ct.* 2101, 182 *L.Ed.*2d 867 (2012), to decide whether *Padilla* is retroactively applicable to convictions beyond direct review. The case was argued on November 1, 2012, and a decision is now pending. *Chaidez v. United States,* SCOTUSblog, http://www.scotusblog.com/case-files/cases/chaidez-v-united-states/?wpmp_switcher=desktop (last visited January 28, 2013) (collecting the filings).

his guilty plea might he be entitled to set aside his conviction in accordance with the holding of *Nunez–Valdez.*

Our appellate record does not include a copy of defendant's PCR petition. The only document submitted for our review that contains defendant's factual allegations is a partially illegible copy of a handwritten, undated letter defendant wrote to the judge. In the letter, defendant claimed that no one informed him at the time of his plea that "if [he] was convicted of an aggravated charge [he] could be deported by immigration." He said he had heard of a case in which a defendant had been deported after being convicted of a sexual assault. He said he asked his defense attorney about immigration consequences of his crime because he "was worried about it." Specifically as to counsel's advice, defendant stated: "I told him … I didn't want to have anything to do with immigration. I think he said he didn't think there would be any issue with immigration, and that he would talk to the prosecutor. This was the only time we talked about immigration."

The State asserts that defendant's factual allegations are vague and insufficient to show faulty advice by defense counsel, but in

---

The lower federal courts have reached mixed conclusions on the question of whether *Padilla* should be applied retroactively. The Fourth, Seventh, and Tenth Circuit Courts of Appeal have held that *Padilla* announced a "new" rule of law that is not retroactive. *United States v. Mathur,* 685 *F.*3d 396 (4th Cir.2012); *United States v. Chang Hong,* 671 *F.*3d 1147 (10th Cir.2011); *Chaidez v. United States,* 655 *F.*3d 684 (7th Cir.2011). The Third Circuit has held that *Padilla* was merely an application of *Strickland* to novel facts and not a "new" rule, and thus, it is retroactively applicable. *United States v. Orocio,* 645 *F.*3d 630 (3d Cir.2011). Federal district courts have lined up on both sides of the issue. *See Mathur, supra,* 685 *F.*3d at 400 n. 1 (collecting district court cases holding that *Padilla* does apply retroactively); *United States v. Martinez,* 843 *F.Supp.*2d 136, 138 (D.Mass.2012) (collecting district court cases holding *Padilla* does not apply retroactively and noting the "developing consensus of federal courts in holding that *Padilla* announced a new rule of constitutional law"). State high courts are also split on the retroactivity of *Padilla. See, e.g., Campos v. State,* 816 *N.W.*2d 480, 499 (Minn.2012) (not retroactive); *Denisyuk v. State,* 422 *Md.* 462, 30 *A.*3d 914, 925 (2011) (retroactive); *Commonwealth v. Clarke,* 460 *Mass.* 30, 949 *N.E.*2d 892, 904 (2011) (retroactive).

any event, we should disregard them because the defendant's letter does not comply with the requirements of *Rules* 3:22–8 and 3:22–10(c) applicable to a PCR petition. Those rules require that the facts a defendant alleges be provided by means of a verified petition or a supplementary affidavit or certification.

■ The State's procedural argument is correct, but to avoid delay and further unnecessary proceedings in the trial court, we will consider the facts alleged in defendant's handwritten letter as if they had been properly presented by means of a sworn statement. Viewing the facts most favorably to defendant, *State v. Preciose*, 129 *N.J.* 451, 462–63, 609 *A.*2d 1280 (1992), and therefore assuming defendant's statements to be true, we conclude that the factual allegations are nevertheless insufficient to demonstrate a prima facie case of ineffective assistance of counsel.

First, unlike *Nunez–Valdez, supra*, 200 *N.J.* at 141, 975 *A.*2d 418, defense counsel here did not assure defendant that he would not be deported. Rather, he allegedly stated he did not think deportation would be an issue and he would discuss the matter with the prosecutor. Defendant has not shown this advice deviated from the "prevailing professional norms" in 1998 for a criminal defense attorney. *See Padilla, supra*, 559 *U.S.* at ——, 130 *S.Ct.* at 1482, 176 *L.Ed.*2d at 294 (quoting *Strickland, supra*, 466 *U.S.* at 688, 104 *S.Ct.* at 2052, 80 *L.Ed.*2d at 674).

As discussed in *Padilla*, the fact that federal immigration laws as early as 1922 authorized the deportation of non-citizen drug offenders did not mean that those convicted were automatically deported. Until 1996, the sentencing court or the Attorney General of the United States retained discretion to recommend against or to waive the deportation provisions of federal immigration law. *Id.* at ——, 130 *S.Ct.* at 1478–80, 176 *L.Ed.*2d at 290–92. Even after 1996, deportation proceedings did not automatically follow a conviction for a narcotics offense, as the facts of this case reveal. Defendant was sentenced in 1998 and remained undisturbed by federal immigration officials for almost twelve years.

■ Second, we reject defendant's contention that Question 17 on the plea form used in 1998 was "a misstatement of federal law" because it did not inform him that he was "subject to mandatory deportation." In the concluding paragraphs of *Nunez–Valdez, supra,* 200 *N.J.* at 143, 975 *A.2d* 418, the Court directed that Question 17 be revised and new language be added to the plea form to give more precise information about immigration and deportation consequences of certain convictions. *Id.* at 144, 975 *A.2d* 418. The Court's directive, however, is not equivalent to a finding that the plea form was constitutionally deficient.

The Court did not hold that advising a client he *may* be deported was incorrect or deficient legal advice. *Id.* at 138, 143, 975 *A.2d* 418. In fact, the United States Supreme Court in *Padilla* stated that such advice is sufficient in many cases. *See Padilla, supra,* 559 *U.S.* at ——, —— & n. 15, 130 *S.Ct.* at 1483, 1486 & n. 15, 176 *L.Ed.2d* at 296, 298–99 & n. 15 (also referring to "possible deportation" to describe defense counsel's duty to advise and to "possible immigration consequences" as apparently acceptable content of plea forms used to advise a defendant of the consequences of a guilty plea).

We disagree with defendant's contention that competent representation required advice from his attorney that he "would" be deported as a result of his conviction. In 1998, on the cusp of modification of federal deportation law, defense counsel could not have reasonably predicted the certainty or even likelihood of defendant's deportation. In fact, it might have been incorrect at that time for defense counsel to have advised defendant he would surely, or likely, be deported and thus potentially have caused defendant to forego a favorable plea offer and to accept the likelihood of a longer term in state prison by conviction at trial. A longer prison sentence would not have saved defendant from deportation.

Accurate advice was provided to defendant in 1998 by the court's warning through its plea procedures that defendant "may" be deported as a result of his conviction. Considering the attend-

ant circumstances in 1998, counsel's prediction that defendant would not have an immigration issue, in conjunction with the warning that he may be deported, was not unreasonable advice or outside the norms of the profession. As a factual matter, the information defendant received is not prima facie proof of ineffective assistance of counsel.

## B.

■ Besides defendant's petition being factually insufficient to warrant the relief he seeks, defendant is barred from pursuing his claims because he did not file a timely PCR petition. Defendant's judgment of conviction was filed on the date of his sentencing, September 25, 1998. He filed his PCR petition on August 18, 2010, almost twelve years later. *Rule* 3:22–12(a)(1) sets a five-year time limitation for the filing of a PCR petition, unless the petition itself shows excusable neglect for the late filing and fundamental injustice if defendant's claims are not considered on their merits. By its subsection (a)(2), *Rule* 3:22–12 allows an additional one-year limitation period if the courts recognize a new constitutional right or defendant discovers a previously unknown factual predicate justifying relief from the conviction.[3]

---

[3] As amended effective February 1, 2010, *Rule* 3:22–12 states in relevant part:

(a) **General Time Limitations.**

(1) **First Petition For Post–Conviction Relief.** . . . [N]o petition shall be filed pursuant to this rule more than 5 *years* after the date of entry pursuant to Rule 3:21–5 of the judgment of conviction that is being challenged *unless* it alleges facts showing that the delay beyond said time was due to defendant's *excusable neglect* and that there is a reasonable probability that if the defendant's factual assertions were found to be true enforcement of the time bar would result in *a fundamental injustice.*

(2) **Second or Subsequent Petition for Post–Conviction Relief.** Notwithstanding any other provision in this rule, no second or subsequent petition shall be filed more than one year after the latest of:

(A) the date on which *the constitutional right asserted was initially recognized* by the United States Supreme Court or the Supreme Court of New Jersey, if that right has been newly recognized by either of those Courts and made retroactive by either of those Courts to cases on collateral review; or

Nothing in our record demonstrates excusable neglect for defendant's failure to file a PCR petition within five years of his conviction. Nor did he file his petition within one year of the courts establishing a new "constitutional right" or of his learning the "factual predicate" that the conviction would have adverse immigration and deportation consequences.

If subsection (a)(2)(A) of the rule expanded the limitation period for the filing of defendant's PCR petition, defendant failed to file it within one year of the date *Nunez–Valdez* was issued, July 27, 2009.[4] Moreover, as the Supreme Court later stated, the holding of *Nunez–Valdez* was not a "new" rule of constitutional law but was based on existing New Jersey precedents. *Gaitan, supra,* 209 *N.J.* at 375, 37 *A.*3d 1089 (citing *State v. Garcia,* 320 *N.J.Super.* 332, 339–40, 727 *A.*2d 97 (App.Div.1999), and *State v. Chung,* 210 *N.J.Super.* 427, 434–35, 510 *A.*2d 72 (App.Div.1986)).

If subsection (a)(2)(B) of *Rule* 3:22–12 applies, defendant failed to meet the one-year deadline upon discovering "the factual predicate for the relief sought." According to his handwritten letter, defendant consulted an attorney in 2007 and was advised that his

---

(B) the date on which *the factual predicate for the relief sought was discovered,* if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence;

. . . .

(c) These time limitations shall not be relaxed, except as provided herein. [Emphasis added.]

[4] Although subsection (a)(2) of the amended *Rule* 3:22–12 refers to a "second or subsequent petition" and defendant's PCR petition was the only one he filed, the one-year supplemental period should apply as well to a first petition filed beyond the five-year limitation period of subsection (a)(1). The amended rule would be anomalous if it deemed timely a second or third PCR petition based on a new constitutional right or a factual predicate newly-discovered but did not afford the same time period for a first PCR petition raising the same ground for relief. To determine whether the one-year supplemental period applies to a particular PCR petition, the trial court would have to make a threshold finding that the petition shows violation of a "constitutional right . . . newly recognized" or a new "factual predicate" that could not have been discovered earlier through the exercise of reasonable diligence.

1998 conviction "could be a problem" in his efforts to obtain United States citizenship. So, at least as early as 2007, he was aware of the immigration consequences of his conviction. Yet, he did not seek post-conviction relief until August 2010.

If subsection (a)(2) does not apply at all to defendant's PCR petition because it was his first, then under subsection (a)(1), the lapse of almost seven years beyond the five-year deadline undercuts a finding of excusable neglect and fundamental injustice. *See State v. Milne*, 178 *N.J.* 486, 492, 842 *A.*2d 140 (2004); *State v. Goodwin*, 173 *N.J.* 583, 594–95, 803 *A.*2d 102 (2002); *see also State v. Afanador*, 151 *N.J.* 41, 52, 697 *A.*2d 529 (1997) ("Absent compelling, extenuating circumstances, the burden to justify filing a petition after the five-year period will increase with the extent of the delay."). Defendant cannot assert excusable neglect simply because he received inaccurate deportation advice from his defense counsel. *Goodwin, supra*, 173 *N.J.* at 595, 803 *A.*2d 102. If excusable neglect for late filing of a petition is equated with incorrect or incomplete advice, long-convicted defendants might routinely claim they did not learn about the deficiencies in counsel's advice on a variety of topics until after the five-year limitation period had run.

The New Jersey Supreme Court has required a showing of "compelling, extenuating circumstances" or, alternatively, "exceptional circumstances," to relax the time limitation for a PCR petition. *See Milne, supra*, 178 *N.J.* at 492, 842 *A.*2d 140; *Goodwin, supra*, 173 *N.J.* at 594, 803 *A.*2d 102; *State v. Murray*, 162 *N.J.* 240, 246, 744 *A.*2d 131 (2000); *Afanador, supra*, 151 *N.J.* at 52, 697 *A.*2d 529; *State v. Mitchell*, 126 *N.J.* 565, 579, 601 *A.*2d 198 (1992). Where the deficient representation of counsel affected "a determination of guilt or otherwise wrought a miscarriage of justice," a procedural rule otherwise barring post-conviction relief may be overlooked to avoid a fundamental injustice. *See State v. Nash*, 212 *N.J.* 518, 546, 58 *A.*3d 705 (2013) (quoting *Mitchell, supra*, 126 *N.J.* at 587, 601 *A.*2d 198). However, to succeed on a

claim of fundamental injustice, the petitioner must show that the error "played a role in the determination of guilt." *Ibid.*

In this case, defendant has not claimed he was innocent of the charges. His knowledge of the risk of deportation did not affect the truth-finding function of the court when it accepted his plea. Moreover, defendant had both the opportunity and the incentive to learn whether he might be deported before the time of his arrest by federal immigration authorities in April 2010, but he failed to seek timely consideration of his claims.

In sum, the trial court correctly dismissed defendant's PCR petition as untimely filed.

██ Finally, we review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing. *State v. Marshall,* 148 *N.J.* 89, 157–58, 690 *A.*2d 1, *cert. denied,* 522 *U.S.* 850, 118 *S.Ct.* 140, 139 *L.Ed.*2d 88 (1997). "If the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to post-conviction relief, . . . then an evidentiary hearing need not be granted." *Id.* at 158, 690 *A.*2d 1 (citing *Preciose, supra,* 129 *N.J.* at 462–64, 609 *A.*2d 1280; *State v. Flores,* 228 *N.J.Super.* 586, 590, 550 *A.*2d 752 (App.Div.1988), *certif. denied,* 115 *N.J.* 78, 556 *A.*2d 1220 (1989); and *State v. Odom,* 113 *N.J.Super.* 186, 192, 273 *A.*2d 379 (App.Div.1971)). We find no abuse of discretion in the denial of defendant's PCR petition without an evidentiary hearing since the facts as alleged by defendant did not entitle him to the relief he sought.

Affirmed.