**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3684-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

FERNANDO CASTRO, a/k/a
BOLOS,

     Defendant-Appellant.

_____

Submitted February 12, 2019 – Decided August 1, 2019

Before Judges Gilson and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 99-09-0899.

Ronald P. Mondello, attorney for appellant.

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Christopher W. Hsieh, Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Fernando Castro appeals from a March 15, 2018 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing and his motion to withdraw his guilty plea. We reverse the portion of the order denying defendant's PCR petition, and remand for an evidentiary hearing to address his claim of ineffective assistance of counsel based on his trial counsel's alleged affirmative misrepresentations regarding the immigration consequences of his guilty plea. We affirm, however, the March 15, 2018 order to the extent it determined that defendant's trial counsel was not ineffective for failing to appeal defendant's rejection from the Pre-Trial Intervention Program (PTI), or for failing to negotiate a purported "immigration safe plea." We also affirm the court's denial of defendant's motion to withdraw his guilty plea.

I.

When he was eleven years old, defendant came to the United States from Mexico without immigration papers. Eight years later, defendant, along with two other individuals, was arrested for attacking and striking M.D.[1] with a belt and metal pipe. Defendant was charged with third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2); third-degree possession of a

---

[1] We use initials for M.D. and G.S. to protect their privacy.

A-3684-17T1

weapon for unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d).

Defendant pled guilty to third-degree aggravated assault with a deadly weapon. In accordance with the plea agreement, the court dismissed defendant's other charges, and sentenced him to three years of probation, with time served of 124 days in jail. He was also ordered to pay restitution of $1613. Defendant did not appeal his sentence. The facts regarding the underlying offense are briefly recounted here to provide context for our opinion.

## II.

On June 23, 1999, defendant was walking in Passaic with then co-defendants, Freddy Perez and Alberto Benitez, when they approached M.D. and his girlfriend, G.S. Perez and Benitez began to fight with M.D., and hit him with a belt and a stick. Defendant joined the fight and struck M.D. with a metal pipe. The police arrived and observed that M.D. was bleeding from a wound to his head. Defendant was arrested that day, and later admitted to the police that he hit M.D. twice with the pipe, and that he believed he hit him in the head.

Defendant applied for entry into PTI, but was rejected for three reasons. The PTI Director explained that first, the nature of the offense was "serious," and therefore "the needs and interests of the victim and society," which

outweighed the "value of supervisory treatment," "would best be served by pursuing prosecution." Second, the PTI Director found significant defendant's failure to recognize his full responsibility for the offense. Specifically, he noted that defendant shifted "substantial blame" to M.D., alleging that M.D. had a knife and attacked one of the co-defendants. Finally, the PTI Director concluded that defendant demonstrated a "pattern of disregard for the laws and/or rules of U.S. society."

The PTI Director explained that defendant entered the country illegally and admitted to being a past member of a Mexican gang in Passaic. Additionally, while defendant denied presently being a gang member, he admitted "that he hangs out with his cousins and nephews who are current gang members." Accordingly, the PTI Director stated that he "cannot reasonably assure the [c]ourt that defendant will not continue to become involved in further illegal conduct." Defendant's trial counsel did not appeal the PTI Director's decision.

As noted, defendant entered into a negotiated plea agreement on November 15, 1999, and pled guilty to third-degree aggravated assault with a deadly weapon. The State agreed to recommend a sentence of probation with the possibility of up to 364 days in county jail and dismissal of the remaining

4

charges. On the plea form, defendant responded affirmatively to question seventeen, which asked: "Do you understand that if you are not a United States citizen or national, you may be deported by virtue of your plea of guilty?" Defendant signed and dated the third page of the plea form, and initialed the first and second pages.

At the plea hearing on the same day, defendant admitted to hitting M.D. with a belt while Benitez was also hitting M.D. Defendant's counsel asked defendant if "anybody promise[d] [him] anything besides what's in the plea agreement to get [him] to plead guilty," and defendant responded "No." Additionally, the following colloquy occurred between defendant and his counsel:

> [COUNSEL]: It's also possible, because you don't have a green card, that the immigration service could decide to [deport] you. I explained that to you, did I not?
>
> DEFENDANT: Yes.
>
> [COUNSEL]: You understand that?
>
> DEFENDANT: Yes.
>
> [(Emphasis added).]

On February 4, 2000, defendant was sentenced to three years of probation, with time served of 124 days, and ordered to pay M.D. $1613 in restitution. The court entered a Judgment of Conviction (JOC) on the same day.

Before the PCR court, defendant's PCR counsel represented that defendant "had no idea that he was deportable" as a result of his conviction until he sought counsel's services to "file a green card application based on his marriage to a U.S. citizen." PCR counsel stated that he "immediately told [defendant] that he was going to be deported if he filed that application." Approximately eight months after his meeting with PCR counsel, and seventeen years after the entry of his JOC, on October 18, 2017, defendant filed his PCR petition and a motion to withdraw his guilty plea.

In his PCR petition, defendant asserted that his trial counsel gave "misadvice as to the immigration consequences" of his plea. Specifically, defendant contended that his counsel affirmatively misrepresented that "as long as [he] did not go to prison, [he] . . . would not be deported." In his October 13, 2017 affidavit in support of his petition, defendant asserted that he "would NEVER have pled guilty if [he] thought [he] was going to be deported," and that he "would have taken [his] chances and gone to trial had [he] known" he'd be deported. Additionally, defendant claimed his counsel failed to insist defendant

6

"seek . . . advice from an immigration attorney," file a motion for the court to determine whether defendant was "a good candidate for PTI," and file various pre-trial evidentiary motions.

The PCR court heard oral arguments on March 15, 2018, and denied defendant's petition and motion to withdraw his plea. First, in considering whether defendant's PCR petition was time barred by Rule 3:22-12(a)(1), the PCR judge, who was also the sentencing judge, found significant that defendant responded affirmatively to question seventeen in the plea form, and indicated at the plea hearing that he understood that he may be deported if he pled guilty. Additionally, the court noted that the State indicated in its brief that "if relief was given to defendant[,] [it] could not proceed with the case because of the time lapse, [and] consequently, it would suffer prejudice." Accordingly, the court determined defendant's petition was time barred because it was "not satisfied . . . that the interest of justice demand that the . . . rule be relaxed."

The PCR judge, nevertheless, discussed the merits of defendant's claims. With respect to defendant's claim that plea counsel affirmatively misinformed him of the immigration consequences of his plea, the court concluded that "[i]n light of being advised at the plea hearing that he may be deported if he pled guilty, defendant's general statement that his attorney told him he would not be

deported if he did not receive a jail sentence is insufficient to demonstrate deficient performance."

Further, the court "f[ound] that defendant ha[d] not shown that . . . had he known that [his trial counsel's] advice was incorrect he would not have pled guilty." Additionally, the court stated that because defendant was on bail and not incarcerated at the time of his plea, there was "no pressure on him to plead guilty," and the plea was made voluntarily. Accordingly, the court concluded that because defendant's "bare allegation [was] not . . . substantiated by other facts [in] the record[,] . . . [he] ha[d] not demonstrated a prima facie case requiring an evidentiary hearing."

With respect to defendant's assertion that his trial counsel was ineffective because he "failed to file a motion to admit [him] into [PTI]," the court determined the "contention lacks merit." The court noted the PTI Director's bases for rejecting defendant, and concluded there was no "patent and gross abuse of discretion."

Finally, the court addressed defendant's motion to withdraw his guilty plea and applied the four factors detailed in State v. Slater, 198 N.J. 145, 157-58

(2009).[2] Specifically, as to factor one, the court "place[d] no weight on defendant's current claim of innocence." With respect to factor two, the court restated its previous conclusion that defendant's trial counsel was not ineffective. In considering factor three, the court noted that "the other charges of the indictment were dismissed and . . . defendant . . . received a probationary sentence." Finally, as to factor four, the court stated that "it's [been] nearly twenty years [since the incident] and it's very doubtful that the State could really pick up and try this case at this point is time." Thus, after balancing the four Slater factors, the court "[did] not find . . . a manifest injustice such [that] defendant should be permitted to withdraw his guilty plea." Accordingly, in a March 15, 2018 order, the court denied defendant's petition for PCR and motion to withdraw his guilty plea. This appeal followed.

---

[2] As stated in Slater, a court evaluating motions to withdraw a guilty plea must "consider and balance" the following factors:

> (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.
> [Ibid.]

9

III.

Defendant raises the following issues on appeal, which we have renumbered for ease of reference:

POINT I

THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT'S DELAY IN FILING THE PETITION WAS NOT DUE TO EXCUSABLE NEGLECT AND THAT THE DEFENDANT'S PETITION WAS FILED WITHIN ONE YEAR OF DISCOVERING THE FACTUAL PREDICATE FOR THE RELIEF SOUGHT PURSUANT TO RULE 3:22-12(a)(2)(B)

    A. PETITIONER HAS ESTABLISHED EXCUSABLE NEGLECT

    B. ENFORCEMENT OF THE TIME BAR WOULD RESULT IN A FUNDAMENTAL INJUSTICE

    C. THERE IS NO TIME LIMITATION ASSOCIATED WITH A MOTION TO WITHDRAW A GUILTY PLEA

POINT II

THE DEFENDANT WAS DENIED HIS UNITED STATES CONSTITUTIONAL RIGHT AND NEW JERSEY STATE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND TO DUE PROCESS AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND BY ARTICLE I, PARAGRAPH X OF THE NEW JERSEY STATE CONSTITUTION DUE TO COUNSEL'S:

10

1) ERRONEOUS ADVICE AS TO THE CONSEQUENCE OF HIS PLEA; 2) FAILURE TO FILE AN APPEAL TO BE ADMITTED TO THE PRE-TRIAL INTERVENTION PROGRAM; 3) FAILURE TO FILE A MOTION TO ADMIT DEFENDANT INTO THE PRE-TRIAL INTERVENTION PROGRAM; 4) FAILURE TO FILE ANY PRE-TRIAL MOTIONS OR TO CONTEST IN ANY WAY THE STATE'S CASE; AND 5) FAILURE TO NEGOTIATE A "SAFE HAVEN"; A PRESUMPTION OF PREJUDICE EXISTS, OR, AT THE VERY LEAST, A REASONABLE PROBABILITY EXISTS THAT BUT FOR THE ERRORS THE RESULT OF THE PROCEEDINGS WOULD HAVE BEEN DIFFERENT; THE DEFENDANT'S CONVICTION SHOULD BE VACATED

POINT III

PURSUANT TO STATE V. SLATER, 198 N.J. 145 (2009), DEFENDANT MEETS THE "MANIFEST INJUSTICE" FOUR FACTOR BALANCING TEST IN ORDER TO WITHDRAW A GUILTY PLEA

IV.

Defendant first maintains that the PCR court committed error when it concluded that his PCR petition was time barred. Specifically, defendant asserts that he has established excusable neglect for the delay in filing his petition, and thus, the time bar should be relaxed.

Pursuant to Rule 3:22-12(a)(1), PCR petitions must be filed within five years from the date of entry of the JOC. The rule encourages litigants to

11

promptly file for PCR, and serves two primary functions. State v. Murray, 162 N.J. 240, 249 (2000). "First, the passing of time after a conviction increases the difficulties associated with a fair and accurate reassessment of the events." Ibid. "Second, respect for the finality of judgments and the undesirable uncertainty fostered by unlimited relitigation support the enforcement of a time bar on petitions." Ibid.

Rule 3:22-12(a)(1)(A) waives the time bar, however, if "facts showing that the delay beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions were found to be true enforcement of the time bar would result in a fundamental injustice." To demonstrate "excusable neglect," a defendant must provide more than "simply . . . a plausible explanation for a failure to file a timely PCR petition." State v. Norman, 405 N.J. Super. 149, 159 (App. Div. 2009). "If the petitioner does not allege sufficient facts, the [r]ule bars the claim." State v. Mitchell, 126 N.J. 565, 576 (1992).

> To determine whether a defendant has asserted a sufficient basis for relaxing the Rule's time restraints, we "should consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an 'injustice' sufficient to relax the time limits."

> [<u>Norman</u>, 405 N.J. Super. at 159 (quoting <u>State v. Afanador</u>, 151 N.J. 41, 52 (1997)).]

"Absent compelling, extenuating circumstances, the burden to justify filing a petition after the five-year period will increase with the extent of the delay." <u>State v. Milne</u>, 178 N.J. 486, 492 (2004) (quoting <u>Afanador</u>, 151 N.J. at 52).

We conclude that an evidentiary hearing is necessary to determine whether defendant has established excusable neglect and if enforcement of the time bar would result in a fundamental injustice. While the PCR court concluded it was "not satisfied . . . that the interest of justice demand that the . . . [time bar] be relaxed," it made no specific findings with respect to defendant's statement that his trial counsel affirmatively misled him. Moreover, defendant asserts that the seventeen year delay from the time of his February 4, 2000 JOC to the filing of his PCR petition was excusable because he was affirmatively misinformed concerning the immigration consequences of his plea, and had no reason to suspect that he received ineffective assistance of counsel until he consulted with PCR counsel to apply for a green card. Defendant stated in his certification that he "recently found out" that he was "misadvised as to the consequences of [his] plea." As noted, before the PCR

court, defendant's PCR counsel stated that in February 2017 he informed defendant that he was subject to mandatory deportation.[3]

In support of its claim that defendant's petition is time barred, the State relies on our decision in State v. Brewster, 429 N.J. Super. 387, 400 (App. Div. 2013), in which we stated that a "[d]efendant cannot assert excusable neglect simply because he received inaccurate deportation advice from his defense counsel." The State further relies on the Brewster court's statement that "[i]f excusable neglect for late filing of a petition is equated with incorrect or incomplete advice, long-convicted defendants might routinely claim they did not learn about the deficiencies in counsel's advice on a variety of topics until after the five-year limitation period had run." Ibid.

This case, however, is distinguishable from Brewster. In that case, the defendant's trial counsel predicted that there would be no "issue with immigration" as a result of his conviction. Id. at 395. The court concluded that in light of the "attendant circumstances in 1998," when federal deportation law was "on the cusp of modification," defendant's counsel's statement, along with the deportation warning in question seventeen of the plea form, "was not

---

[3] We note that in defendant's brief on appeal, he asserts that he consulted with PCR counsel in March 2017.

unreasonable advice or outside the norms of the profession." Id. at 397-98. The Brewster court stated that the "defense counsel could not have reasonably predicted the certainty or even likelihood of defendant's deportation." Id. at 397. Additionally, in that case, the defendant became aware of the immigration consequences of his plea three years prior to filing his PCR petition when he consulted an attorney who advised him that his conviction "could be a problem." Id. at 399-400.

Here, in contrast, defendant certified that his counsel stated that he would not face deportation "as long as [he] did not go to prison," which is an affirmative misrepresentation of the immigration consequences of defendant's plea. As detailed in subsection A of this decision, defendant's deportation was mandatory as a result of his guilty plea. Further, defendant asserts that he filed his PCR petition less than a year after becoming aware that he was subject to mandatory deportation.

Defendant also argues in the alternative that, pursuant to Rule 3:22-12(a)(2)(B), he properly filed his PCR petition within one year of consulting with his PCR counsel regarding a green card application and learning that his conviction subjected him to mandatory deportation.

Rule 3:22-12(a)(2)(B) states in pertinent part that "no second or subsequent petition shall be filed more than one year after . . . the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence." R. 3:22-12(a)(2)(B). Although the rule "refers to a 'second or subsequent petition[,]' . . . the one-year supplemental period should apply as well to a first petition filed beyond the five-year limitation period of subsection (a)(1)." Brewster, 429 N.J. Super. at 399 n.4. "To determine whether the one-year supplemental period applies to a particular PCR petition, the trial court would have to make a threshold finding that the petition shows . . . a new 'factual predicate' that could not have been discovered earlier through the exercise of reasonable diligence." Ibid. Thus, on remand, the trial court should assess whether defendant has established a factual predicate to warrant the application of Rule 3:22-12(a)(2)(B).

V.

We next discuss the merits of defendant's ineffective assistance of counsel claims. As noted, defendant primarily maintains that his trial counsel was ineffective because he affirmatively misadvised defendant that he would not be subject to deportation as a result of his guilty plea as long as he was not

16

sentenced to a period of incarceration.  Defendant further asserts that his counsel was ineffective by failing to appeal his rejection from PTI, or file a motion to admit him into PTI.  Finally, defendant contends counsel was constitutionally deficient based on his trial counsel's failure to negotiate a plea to an offense that did not subject him to mandatory deportation.  We address each of these claims separately.[4]

As defendant's PCR petition is based on his claim that trial counsel rendered ineffective assistance, he must satisfy the two-part test pronounced in Strickland v. Washington, 466 U.S. 668, 687 (1984).  The first prong requires a showing that "counsel's representation fell below an objective standard of reasonableness."  Id. at 688.  In other words, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687; see also State v. Fritz, 105 N.J. 42, 58 (1987).

---

[4]  Defendant asserted in his PCR petition that trial counsel was ineffective by failing to file nine pre-trial evidentiary motions.  Defendant, however, fails to raise these issues in his brief on appeal, and accordingly, we consider them waived.  See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

Under the second prong, a defendant must demonstrate that his counsel's "deficient performance prejudiced the defense" to the extent that it "deprive[d] the defendant of a fair trial." Strickland, 466 U.S. at 687. To establish this prong, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

A. Affirmative Misadvice

In 2009, our Supreme Court held in State v. Nunez-Valdez, 200 N.J. 129 (2009), that "a defendant can show ineffective assistance of counsel by proving that his guilty plea resulted from 'inaccurate information from counsel concerning the deportation consequences of his plea.'" Brewster, 429 N.J. Super. at 392 (quoting Nunez-Valdez, 200 N.J. at 143). In 2010, the United States Supreme Court in Padilla v. Kentucky, 559 U.S. 356 (2010), ruled that counsel's duty includes not only avoiding "false or misleading information" as stated in Nunez-Valdez, but also the affirmative duty to inform a defendant entering a guilty plea with respect to the relevant mandatory deportation law if it is "succinct, clear, and explicit." Padilla, 559 U.S. at 368.

The Padilla Court held that counsel's "failure to advise a noncitizen client that a guilty plea will lead to mandatory deportation deprives the client of the

effective assistance of counsel guaranteed by the Sixth Amendment."  State v.

Barros, 425 N.J. Super. 329, 331 (App. Div. 2012) (citing Padilla, 559 U.S. at

369).  However, because Padilla "announced a new rule" and is therefore "not

entitled to retroactive effect," for convictions entered before the decision in

Padilla, "Nunez-Valdez still governs the standard of attorney performance in

New Jersey in ineffective assistance of counsel claims on collateral review."

State v. Gaitan, 209 N.J. 339, 373-74 (2012).

Here, defendant's claims are governed by the Nunez-Valdez standards,

and therefore trial counsel had no duty to inform defendant that as a consequence

of his plea, he would be deported.  Rather, counsel was obligated to avoid

providing inaccurate or misleading information regarding the immigration

consequences of defendant's plea.  See State v. Santos, 210 N.J. 129, 143 (2012)

("Petitions challenging the entry of guilty pleas prior to Padilla on ineffective

assistance of counsel grounds must be assessed under the law as it existed under

[Nunez-Valdez], which instead focuses on whether counsel provided affirmative

misadvice regarding the immigration  consequences of a guilty plea.")

Applying these principles, we are persuaded that an evidentiary hearing is

appropriate to test defendant's assertions of ineffective assistance of counsel and

resulting prejudice.  As noted, because the PCR court resolved the motion

without an evidentiary hearing, it made no specific findings, credibility or otherwise, with respect to his trial counsel's alleged statement that defendant would not be deported "as long as [he] did not go to prison." Defendant's confirmatory response to question seventeen of the plea form indicated that he understood that he "may be deported" as a result of his guilty plea is consistent with a fair reading of defendant's certification in which he stated that he believed, due to his attorney's misadvice, that so long as he was not sentenced to a prison term, he would not be deported.

As defendant's brief asserts, at the time of his plea, he was immediately deportable as a result of his conviction of third-degree aggravated assault with a deadly weapon, which is a crime of "moral turpitude."[5] See 8 U.S.C. § 1182(a)(2)(A)(i)(I) (stating a non-citizen convicted of a "crime involving moral turpitude" is "inadmissible"); Matter of Medina, 15 I. & N. Dec. 611, 614 (B.I.A. 1976) (explaining that aggravated assault with a deadly weapon is "generally deemed to be a crime involving moral turpitude"); Matter of Ptasi, 12 I. & N. Dec. 790 (B.I.A. 1968) ("We concluded that the offense of assault with a deadly

---

[5] The State has not provided contrary legal authority to dispute defendant's contention that in 2000, his conviction of third-degree aggravated assault with a deadly weapon was a crime of moral turpitude rendering him immediately deportable.

or dangerous weapon (not named) in violation of section 6195 of the General Statutes of Connecticut, involved moral turpitude."); Matter of G–R–, 2 I. & N. Dec. 733 (B.I.A. 1946) ("[O]ur courts have held that a wilful assault with a dangerous weapon involves moral turpitude."); see also Partyka v. Attorney Gen. of U.S., 417 F.3d 408, 414 (3d Cir. 2005) ("[T]he hallmark of moral turpitude is a reprehensible act committed with an appreciable level of consciousness or deliberation."). Further, we note that defendant's trial counsel's questioning at the November 15, 1999 plea hearing in which he suggested that it was "possible" that defendant could be deported due to his lack of a green card does not reflect the fact that he was immediately deportable.[6]

As to the second Strickland prong, we conclude there was sufficient evidence in the record to establish a prima facie claim of prejudice, that is, as a result of the alleged ineffective assistance of counsel, defendant "would not have plead guilty and would have insisted on going to trial." Nunez-Valdez, 200 N.J. at 139. In this regard, defendant certified that he "would have taken [his] chances at trial had [he] known that [he] would [be] deported," and that he

---

[6] We also note that at the plea hearing, counsel reported to the court that defendant was "in the ninth year of a ten year wait to get his green card." There is no evidence in the record to support counsel's statement that defendant was ever eligible for a green card.

"would have rather risked spending a period of time in jail as opposed to a life-sentence stuck in Mexico." As the PCR court acknowledged, defendant had no prior arrests or convictions and enjoyed a "presumption of non[-]incarceration."

Thus, the potential consequences of conviction after trial were not so severe as to render implausible his claim that he would have rejected the plea offer. Accordingly, we conclude defendant is entitled to an evidentiary hearing for the PCR court to determine whether he can established that "counsel's representation fell below an objective standard of reasonableness" and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694.

Based upon the testimony presented at the evidentiary hearing, the court should make necessary credibility findings with respect to defendant's claim that his counsel made the aforementioned affirmative misstatements regarding the immigration consequences of his plea. In addition, the court should make findings with respect to any prejudice visited upon the State or defendant. Finally, the court should address whether the evidence presented by defendant established excusable neglect for his seventeen year delay, and if enforcement of the time bar would result in a fundamental injustice. We specifically note

that by ordering the evidentiary hearing we are not expressing any view as to the outcome of the proceeding.

B. Failure to Appeal from PTI Rejection or Move to Admit Defendant into PTI

We reject, however, defendant's assertion that his trial counsel was ineffective for failing to "fil[e] a motion to admit defendant into the [PTI] program," or "fil[e] an appeal with the lower court to accept him into PTI over the [PTI] Director's objection." We note that "[i]n order to overturn a prosecutor's rejection, a defendant must 'clearly and convincingly establish that the prosecutor's decision constitutes a patent and gross abuse of discretion.'" State v. Watkins, 193 N.J. 507, 520 (2008). Further, "[t]he scope of judicial review of PTI decisions is 'severely limited[,]' and interference by reviewing courts is reserved for those cases where needed 'to check . . . the "most egregious examples of injustice and unfairness."'" State v. Lee, 437 N.J. Super. 555, 563 (App. Div. 2014) (second and third alterations in original) (quoting State v. Negran, 178 N.J. 73, 82 (2003)).

The trial court discussed the PTI Director's bases for rejecting defendant and concluded that, based on the PTI Director's findings, it "would not have overturned [the PTI Director's] decision based upon a patent and gross abuse of discretion." Further, the record contains no basis to conclude that the PTI

A-3684-17T1

Director's decision constituted a gross abuse of discretion, or that counsel's failure to challenge the decision was deficient under the first <u>Strickland</u> prong. <u>See</u> <u>Lee</u>, 437 N.J. Super. at 563 (quoting <u>State v. Bender</u>, 80 N.J. 84, 93 (1979) ("If a defendant rejected for PTI can prove that the denial '(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment[,]' then an abuse of such discretion would 'be manifest.'")).

C. Failure to Negotiate for an Immigration Safe Plea

We also disagree with defendant's assertion that his trial counsel rendered ineffective assistance because he "failed to negotiate an immigration safe plea for [defendant] despite the ready availability of an alternative." Defendant primarily relies on <u>Kovacs v. United States</u>, 744 F.3d 44, 52 (2d Cir. 2014), in which the court concluded:

> a defense lawyer's incorrect advice about the immigration consequences of a plea is prejudicial [under the second <u>Strickland</u> prong] if it is shown that, but for counsel's unprofessional errors, there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense.

Here, defendant provides no legal or factual support for his assertion that the State would have offered a plea to defendant to an offense, "such as simple

assault or simple possession of [a] weapon," such that he could avoid being "mandatorily deportable."

## VI.

Finally, defendant asserts that the PCR court erroneously balanced the four <u>Slater</u> factors in denying his motion to withdraw his guilty plea. Defendant maintains that a balancing of the factors demonstrates a "manifest injustice" and his motion should have been granted. We disagree, and affirm for substantially the reasons expressed by the PCR judge. We offer only the following brief comments.

As noted, in exercising its discretion to decide a motion to withdraw a guilty plea, courts "are to consider and balance four factors": "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." <u>Slater</u>, 198 N.J. at 157-58. "No one factor is dispositive, nor must a movant satisfy all four." <u>State v. O'Donnell</u>, 435 N.J. Super. 351, 369 (App. Div. 2014). "Consideration of a plea withdrawal request," however, "can and should begin with proof that before accepting the plea, the

A-3684-17T1

trial court followed the dictates of <u>Rule</u> 3:9-2," <u>ibid.</u> (quoting <u>Slater</u>, 198 N.J. at 155), which:

> requires the court to determine if 'there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.'
>
> [<u>Ibid.</u> (quoting <u>R.</u> 3:9-2).]

While a motion to withdraw a plea should be made before sentencing, under <u>Rule</u> 3:21-1, courts "may permit it to be made thereafter to correct a manifest injustice." Courts considering motions filed after sentencing apply "a more stringent standard" and "weigh[] more heavily the State's interest in finality." <u>State v. McQuaid</u>, 147 N.J. 464, 487 (1997). Accordingly, "the longer a defendant delays in seeking to withdraw a plea, the greater burden he or she will bear in establishing 'manifest injustice,' because the prejudice to the State under prong four will generally increase." <u>O'Donnell</u>, 435 N.J. Super. at 370. Additionally, "a defendant's reasons for delay may also weigh against relief under factor two." <u>Ibid.</u> A "fair and just reason for withdrawal" under factor two will be found where a "defendant was not informed and thus did not understand material terms and relevant consequences of the guilty plea, namely, the direct, penal consequences of the plea." <u>Slater</u>, 198 N.J. at 159. We note

that a "trial court's denial of defendant's request to withdraw his guilty plea will be reversed on appeal only if there was an abuse of discretion which renders the lower court's decision clearly erroneous." Id. at 372 (quoting State v. Simon, 161 N.J. 416, 444 (1999)).

Further, "when a voluntary and knowing plea bargain has been entered into simultaneously with the guilty plea, defendant's burden of presenting a plausible basis for his request to withdraw his guilty plea is heavier." State v. Huntley, 129 N.J. Super. 13, 18 (App. Div. 1974). "A guilty plea voluntarily entered should not generally be vacated in the absence of some plausible showing of a valid defense against the charges." State v. Gonzalez, 254 N.J. Super. 300, 303 (App. Div. 1992).

We conclude the PCR court properly considered and balanced the four Slater factors in denying defendant's motion to withdraw his guilty plea. The PCR court correctly "place[d] no weight on defendant's . . . claim of innocence," that he struck M.D. because he had a knife and was preparing to injure Perez. As the PCR court noted, the police reports and the record do not demonstrate that M.D. had a knife. While a steak knife was found by the police at the scene, it was "not tied to this crime."

27

Further, defendant admitted to the police that he hit M.D. twice in the head with a metal pipe. Defendant also stated at the November 15, 1999 plea hearing that while Benitez was hitting M.D., he also struck M.D. with a belt. In his certification, defendant does not claim innocence, and rather states that he "did hit [M.D.] and . . . take[s] FULL responsibility for [his] actions." Additionally, as the PCR court stated, defendant's "contention of use of deadly force in defense of another does not consider . . . his obligation to retreat before the use of any type of excessive force."

Accordingly, based on the PCR judge's statements and balancing of the Slater factors, we agree that there was no "manifest injustice such th[at] defendant should be permitted to withdraw his guilty plea."

To the extent not specifically addressed, defendants' remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part, reversed in part, and remanded for an evidentiary hearing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3684-17T1