**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3053-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ARTHUR L. THOMPSON, a/k/a
NASHEED THOMPSON

    Defendant-Appellant.

_____

Submitted March 11, 2020 – Decided April 20, 2020

Before Judges Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 11-08-1559.

Joseph E. Krakora, Public Defender, attorney for appellant (John Andrew Albright, Designated Counsel, on the brief).

Theodore N. Stevens II, Acting Essex County Prosecutor, attorney for respondent (Hannah Faye Kurt, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant appeals from the November 27, 2018 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. In his counseled brief, defendant raises the following arguments for our consideration:

POINT I

THE TRIAL COURT ERRED IN DENYING [DEFENDANT'S] PETITION FOR [PCR] WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION AT THE TRIAL LEVEL.

A. THE LOWER COURT'S MERE SPECULATION THAT [DEFENDANT'S] DECISION NOT TO TESTIFY ON HIS OWN BEHALF WAS "LIKELY THE RESULT OF SOUND TRIAL STRATEGY ON COUNSEL'S BEHALF" WAS NOT A PERMISSIBLE SUBSTITUTE FOR AN EVIDENTIARY HEARING; IN THE ABSENCE OF AN EVIDENTIARY HEARING, THE RECORD DOES NOT DEMONSTRATE THAT TRIAL COUNSEL ADEQUATELY EXPLAINED, OR DISCUSSED AT ALL, THE RELEVANT RAMIFICATIONS CONCERNING [DEFENDANT'S] DECISION WHETHER TO TESTIFY ON HIS OWN BEHALF AND TO REQUEST A JURY INSTRUCTION ON THIS ISSUE.

2

B. [DEFENDANT] DID NOT RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL AS A RESULT OF TRIAL COUNSEL'S FAILURE TO CONDUCT ADEQUATE INVESTIGATION OF ALL POSSIBLE DEFENSES.

C. [DEFENDANT] DID NOT RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL AS A RESULT OF TRIAL COUNSEL'S FAILURE TO AGGRESSIVELY ASSERT AND PURSUE A DEFENSE THAT HE DID NOT KNOW CO-DEFENDANT MILLER BEFORE [THE] MURDER ON JANUARY 18, 2010, INSTEAD CHOOSING TO ALLOW THE PROSECUTOR'S CONTENTION THAT [DEFENDANT] WAS "NAIL[ED] . . . TO THE MURDER SCENE" TO GO UNCHALLENGED AND UNEXPLAINED.

In his pro se brief, defendant raises the following arguments:

[POINT I]

DEFENDANT CLAIMS INEFFECTIVE ASSISTANCE OF [PCR] COUNSEL WHERE [PCR] COUNSEL FAILED TO PERFORM HIS DUTY TO INVESTIGATE SUBSTANTIAL ASSERTIONS AND ADVANCE REQUESTED GROUNDS [INSISTED] UPON AS PER [RULE] 3:22–6(D), STATE V. RUE, 175 N.J. 1 [(2002)].

[POINT II]

3

[DEFENDANT] DID NOT RECEIVE ADEQUATE LEGAL REPRESENTATION FROM PCR COUNSEL, THE MATTER SHOULD BE REMANDED TO THE TRIAL COURT TO ASSIGN NEW []PCR[] COUNSEL TO REPRESENT HIM, TO PERMIT THE FILING OF SUPPLEMENTAL SUBMISSIONS ON HIS BEHALF, AND TO CONDUCT A NEW HEARING RELATING THERETO. (NOT RAISED BELOW).

[POINT III]

PCR COURT DENIED DEFENDANT ADEQUATE PCR REVIEW, ENCOURAGED PCR COUNSEL TO VIOLATE[] DEFENDANT'S RIGHT TO DUE PROCESS AND SHOULD BE REMANDED TO THE TRIAL COURT TO ASSIGN NEW []PCR[] COUNSEL TO REPRESENT HIM, TO PERMIT THE FILING OF SUPPLEMENTAL SUBMISSIONS ON HIS BEHALF AND TO CONDUCT A NEW HEARING RELATING THERETO. (NOT RAISED BELOW).

We reject defendant's contentions and affirm for the reasons expressed in Judge John I. Gizzo's comprehensive and well-reasoned written opinion.

We incorporate herein the facts set forth in State v. Thompson, No. A-4055-12 (App. Div. May 10, 2017) (slip op. at 8), certif. denied, 231 N.J. 119 (2017), wherein we affirmed defendant's 2012 convictions for murder, felony murder, first-degree armed robbery, second-degree burglary, conspiracy, and related weapons possession offenses following a joint jury trial with co-defendant Derrick Miller. We also affirmed the aggregate life sentence, subject

4

to the No Early Release Act, N.J.S.A. 2C:43-7.2, imposed on February 15, 2013. Id. at 21.

To summarize, the convictions "arose out of a home invasion and murder that occurred on January 18, 2010, at a residence in Irvington" located on Brighton Terrace. Id. at 8. "The evidence at trial established that the home was a two-family house where an adult brother [the brother] and sister [the sister] lived with their respective families." Ibid. The decedent, the sister's live-in boyfriend, was fatally shot "three times" by the intruders while the other occupants in the house retreated to various locations. Id. at 8-10. After hearing "a gunshot," the brother

> ran outside. As he hid behind bushes, he heard more gunfire and saw two men get into a car and drive away. Prior to their departure, [he] was able to see the face of one of the assailants.
>
> Almost immediately, the police responded to the home. [The brother] pointed in the direction of the car and exclaimed to the police that "the car is right there[,]" and "that's them, that's them." The responding police officer testified that he followed the car and pulled it over several blocks from the home. The males in the vehicle were later identified as [co-defendant] Miller and [defendant].
>
> [Id. at 9-10 (third alteration in original).]

A-3053-18T4

During the "twelve-day jury trial," in addition to the brother's identification of co-defendant Miller,

> the State proffered numerous witnesses and expert opinions, including a forensic scientist specializing in serology (the study of blood serum) and a forensic scientist specializing in DNA analysis. The serology expert found traces of blood on Miller's white thermal shirt and dark blue-gray pants. The State's forensic scientist analyzed the DNA samples from this clothing and concluded the blood on the clothing was that of the victim . . . .
>
> [Id. at 10-11.]

In his timely PCR petition, as recounted by Judge Gizzo, defendant made the following arguments:

> He argues that he was denied effective assistance of counsel based on his own assertion of non-acquaintance with codefendant Miller, trial counsel's failure to investigate [defendant's] claim of non-acquaintance, trial counsel's failure to object to the absence or presence of blood splatter evidence at the probable cause hearing, and appellate counsel's failure to challenge the trial judge's denial of his motion for acquittal. [Defendant] also argues that he is entitled to either an evidentiary [hearing] or a new trial as a result of his counsel's alleged deficiencies.

Following oral argument, the judge denied defendant's petition. In his November 27, 2018 written decision, the judge reviewed the factual background and procedural history of the case, applied the applicable legal principles, and

6

concluded defendant failed to establish a prima facie case of ineffective assistance of counsel (IAC). The judge found defendant failed to show that either counsel's performance fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 49-53 (1987), or that the outcome would have been different without the purported deficient performance as required under the second prong of the Strickland/Fritz test. Additionally, in rejecting defendant's request for an evidentiary hearing, the judge concluded defendant failed to present any issues that could not be resolved by reference to the existing record.

In rejecting defendant's claim "that he was denied effective assistance of counsel because his trial attorney did not argue his non-acquaintance with [co-defendant] Miller," the judge stated:

> [Defendant] submitted an affidavit in May, 2012, two years after the home invasion occurred. In the affidavit, he claims he ran back to his car, which was parked on Brighton Terrace, after he heard gunshots. Shortly after entering his car for safety, an unknown individual, . . . co-defendant . . . Miller, entered the passenger's seat. [Defendant] then proceeded to drive away with this supposed stranger without anything more than a look of dissatisfaction directed to . . . Miller.
>
> It cannot be said that trial counsel's failure to put this argument forth at trial amounts to deficiency.

Doing so would have required [defendant] to take the stand at trial in order to testify to the contents of his 2012 affidavit. Even so, it only takes two individuals to create a conspiracy, regardless of whether they were already acquainted. Additionally, there is no evidence to suggest that trial counsel prevented [defendant] from his right to take the stand, nor did [defendant] argue this on his direct appeal. . . . Any shortcomings of this trial strategy would not necessarily render counsel ineffective.

Even if counsel fell below the objective standard of performance, there is no reasonable probability that the jury would have decided differently, had [defendant] taken the stand to testify to what he claimed in his affidavit.

[Defendant's] story hardly stands up to the evidence presented at trial. [A neighbor], who lived directly across the street . . . placed [defendant] at the murder scene. She testified that she saw a man who she did not recognize proceed over to the front fence with a mask covering his head one to two minutes after hearing gunshots coming from that direction. Another man followed, and the two made their way up the sidewalk and entered [the] car, which [defendant] borrowed earlier that night.

[The neighbor's] testimony was corroborated not only by her prior statement, but also by [the brother's] real-time report. This evidence directly contradicts [defendant's] story in which he claims that . . . Miller was just a stranger with [the victim's] blood on his clothes who happened to find his way to [defendant's] car as [defendant] was seeking safety from gunfire that he heard in the area.

> In light of this, it seems abundantly clear that counsel's failure to argue non-acquaintance was a conscious, strategic decision rather than a failure to raise a defense that could reasonably be said to have changed the outcome of the trial.

Turning to defendant's argument that he received IAC because "neither his initial defense counsel . . . nor his trial counsel . . . investigated or argued the allegations set forth in his [2012] affidavit," the judge noted "[i]n order to communicate the contents of the affidavit to the jury, [defendant] would have had to take the stand." However, "[h]aving [defendant] take the stand and testify to what he claimed in his affidavit would not only be contradicted by the testimony of at least two other witnesses who saw him enter the car with . . . Miller but would also have exposed him to cross-examination."

On appeal, defendant primarily argues "he did not receive adequate legal representation . . . as a result of counsel's failure to conduct an adequate pretrial investigation[1] which would have resulted in the viable defense that [he] did not

---

[1] Notably, a review of the trial record shows that trial counsel did, in fact, investigate allegations contained in defendant's 2012 affidavit as evidenced by the defense presented at trial. In the affidavit, defendant asserted that on his way to Irvington on the night in question, he had "numerous [phone] calls" between himself and "a friend . . . from Jersey City." At trial, defense counsel produced the Jersey City friend and introduced defendant's phone records during the witness' testimony to corroborate her account that there were "several phone calls" between her and defendant "between . . . [10:00 p.m.] and about [10:26 p.m.]" on January 18, 2010, when the crimes were committed.

know co-defendant Miller before the night" in question "when Miller entered his car unexpectedly and without permission." According to defendant, the judge erred in "reject[ing] this aspect of [his] petition without even affording him an evidentiary hearing."

Merely raising a claim for PCR does not entitle a defendant to relief or an evidentiary hearing. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, trial courts should grant evidentiary hearings only if the defendant has presented a prima facie claim of IAC, material issues of disputed fact lie outside the record, and resolution of those issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013). A PCR court deciding whether to grant an evidentiary hearing "should view the facts in the light most favorable to a defendant . . . ." State v. Preciose, 129 N.J. 451, 463 (1992). However, "[a] court shall not grant an evidentiary hearing" if "the defendant's allegations are too vague, conclusory or speculative." R. 3:22-10(e)(2). Indeed, the defendant "must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance." Cummings, 321 N.J. Super. at 170.

In turn, "we review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing." State v. Brewster,

10

429 N.J. Super. 387, 401 (App. Div. 2013). "If the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to post-conviction relief, . . . then an evidentiary hearing need not be granted." Ibid. (alteration in original) (quoting State v. Marshall, 148 N.J. 89, 158 (1997)). We also typically review a PCR petition with "deference to the trial court's factual findings . . . 'when supported by adequate, substantial and credible evidence.'" State v. Harris, 181 N.J. 391, 415 (2004) (alteration in original) (quoting Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)). However, where, as here, "no evidentiary hearing has been held, we 'may exercise de novo review over the factual inferences drawn from the documentary record by the [PCR judge].'" State v. Reevey, 417 N.J. Super. 134, 146-47 (App. Div. 2010) (alteration in original) (quoting Harris, 181 N.J. at 421). We also review de novo the legal conclusions of the PCR judge. Harris, 181 N.J. at 415-16 (citing Toll Bros., 173 N.J. at 549).

To establish a prima facie claim of IAC, a defendant must satisfy the two-prong Strickland/Fritz test, and "bears the burden of proving" both prongs of an IAC claim "by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012). Specifically, a defendant must show that (1) "counsel's performance was deficient" and he "made errors so serious that counsel was not functioning

11

as the 'counsel' guaranteed . . . by the Sixth Amendment" to the United States Constitution; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694; see also Fritz, 105 N.J. at 52. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Under the first Strickland prong, "a defendant must overcome a 'strong presumption' that counsel exercised 'reasonable professional judgment' and 'sound trial strategy' in fulfilling his responsibilities." State v. Hess, 207 N.J. 123, 147 (2011) (quoting Strickland, 466 U.S. at 689-90). Indeed, "counsel is strongly presumed to have rendered adequate assistance," Strickland, 466 U.S. at 690, as measured by a standard of "reasonable competence." Fritz, 105 N.J. at 53. However, "'[r]easonable competence' does not require the best of attorneys," State v. Davis, 116 N.J. 341, 351 (1989), and "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89.

For that reason,

an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his or her counsel's exercise of judgment during the trial. The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt. As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of a fair trial.

[State v. Castagna, 187 N.J. 293, 314-15 (2006) (citations, internal quotation marks, and brackets omitted).]

Thus, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689.

Under the second Strickland prong, defendant must prove prejudice. Fritz, 105 N.J. at 52. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. This prong "is an exacting standard" and "'[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or the result reached.'" State v. Allegro, 193 N.J. 352, 367 (2008) (alteration in original) (quoting Castagna, 187 N.J. at 315).

Applying these principles, we are satisfied defendant failed to make a prima facie showing of IAC under the Strickland/Fritz test, and we discern no abuse of discretion in the judge's denial of defendant's PCR petition without an evidentiary hearing.

Defendant contends his attorney was ineffective by failing to conduct an adequate pretrial investigation of his non-acquaintance defense. An attorney's failure to investigate "is a serious deficiency that can result in the reversal of a conviction." Porter, 216 N.J. at 353. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. However, "when a [defendant] claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Cummings, 321 N.J. Super. at 170.

Here, defendant asserts his 2012 affidavit provided the necessary facts that an investigation would have revealed. However, he acknowledges, as the judge did, that "the only way this potential defense could have been raised at trial would have been for [defendant] to testify on his own behalf." Instead, defendant knowingly and voluntarily waived his right to testify at trial.

At the PCR hearing, for the first time, defendant implied that defense counsel did not "properly advise him as to whether or not he should take the stand." However, defendant offered no support for this claim and, notwithstanding defendant's argument to the contrary, the voir dire conducted by the trial court confirmed that defendant's decision to waive his right to testify was "voluntary" and was made after "complete consultation with [his attorney]."

Defendant's unsupported claim that he was not properly advised whether to testify is fatal to his petition and fatal to his argument that he was entitled to an evidentiary hearing. Indeed, "[d]efendant must demonstrate a prima facie case for relief before an evidentiary hearing is required, and the court is not obligated to conduct an evidentiary hearing to allow defendant to establish a prima facie case not contained within the allegations in his PCR petition." State v. Bringhurst, 401 N.J. Super. 421, 436-37 (App. Div. 2008). Even assuming defense counsel failed to properly advise defendant of his right to testify, because the Strickland/Fritz test requires "defendants to prove that they have been prejudiced by defense counsel's failure to inform them of the right to testify[,]" State v. Bey, 161 N.J. 233, 271 (1999), we agree with Judge Gizzo that defendant also failed to satisfy the prejudice prong because his testimony

would not have altered the outcome "in the context of the State's evidence of defendant's guilt." Castagna, 187 N.J. at 314-15.

In his pro se brief, defendant asserts for the first time on appeal that his PCR counsel was ineffective because he failed to advance all the issues raised by defendant and failed to investigate claims raised by defendant. "Generally, an appellate court will not consider issues, even constitutional ones, which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012). Thus, we decline to consider defendant's newly minted contentions. Indeed, our task on this appeal is to review the PCR court's ruling in view of the record before us. However, defendant is free to file a new PCR petition asserting that counsel assigned to represent him in his first PCR rendered ineffective assistance. See R. 3:22-4(b)(2)(C). To the extent we have not specifically addressed any of defendant's remaining arguments, we deem them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16