# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0534-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

L.O.R.,[1]

     Defendant-Appellant.

_____

Submitted March 4, 2025 – Decided March 19, 2025

Before Judges Gooden Brown and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 17-08-1179.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Mark Zavotsky, Designated Counsel, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel and on the brief; Catherine A. Foddai, on the brief).

---

[1] We use initials to protect the privacy of the victim pursuant to Rule 1:38-3(c)(12).

PER CURIAM

Defendant appeals from a September 12, 2023 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing.[2] We affirm.

Following a 2018 jury trial, defendant was convicted of one count of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); three counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b); and one count of second-degree child endangerment, N.J.S.A. 2C:24-4(a)(1), in connection with his sexual abuse of his preadolescent stepdaughter over a two-year period. He was sentenced to an aggregate term of forty years in prison, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, and a special sentence of parole supervision for life, N.J.S.A. 2C:43-6.4. He was also ordered to comply with Megan's Law, N.J.S.A. 2C:7-1 to -23.

We affirmed the convictions in an unpublished opinion which we incorporate by reference, State v. L.O.R., No. A-1237-18 (App. Div. Feb. 3, 2021) (slip op. at 23). We recounted the facts, noting that "[d]uring her direct examination at trial, the victim testified to various instances of sexual assault

---

[2] The notice of appeal mistakenly lists the order being appealed as dated September 19, 2023.

that occurred from 2015 to 2017 that involved defendant touching her 'on top' of her vagina and defendant taking her hand, putting it inside his pants, and forcing her to touch his penis." Id. at 6. We explained that, during a videotaped pre-trial interview with a detective, that was admitted into evidence pursuant to N.J.R.E. 803(c)(27), the victim described one incident during which defendant "digitally penetrat[ed] her with two fingers." Id. at 4, 7. However, during her trial testimony that occurred before the video interview was played for the jury, in response to the prosecutor's repeated questioning, the victim "did not mention any penetration." Id. at 6. The penetration described in the video statement formed the evidential basis for the first-degree charge. Id. at 2.

Defense counsel repeatedly objected to the victim testifying before the video statement was played for the jury and requested that the video be played "while she was still on the witness stand" to afford "full and comprehensive cross-examination in front of the jury." Id. at 5-6. Defense counsel also reiterated her objection to the admissibility of the video. Id. at 5.

> The trial court was not persuaded and ruled that, consistent with its Rule 104 hearing determination, the State would be permitted to play the video statement during its case-in-chief at a point in the State's discretion so long as the victim testified first. The court did not discern any prejudice to defendant and was satisfied that "defendant's right of confrontation [was] protected" "because the defendant has the statement,

3

has the video of the statement and has the transcript of the statement."

[Id. at 5 (alteration in original).]

After the victim testified,

defense counsel cross-examined the victim for over an hour. The cross-examination did not address the inconsistency between the victim's testimony at trial and in the videotaped statement about digital penetration, but defense counsel used the transcript from the earlier statement to question the victim about other inconsistencies. . . . Afterward, . . . the court excused the victim from the courtroom. Defendant never asked to recall the victim as a witness.

[Id. at 6.]

In her summation,

defense counsel relied upon the inconsistencies in the victim's statement and testimony to undermine her credibility with the jury. She specifically compared the victim's allegation in her video statement that defendant had digitally penetrated her with her testimony at trial and argued that the victim had given "completely contradictory and irreconcilable statements regarding digital penetration."

[Id. at 8.]

On direct appeal, defendant argued "the trial court should have reconsidered its earlier ruling admitting the videotaped interview into evidence

4

after the victim testified in court inconsistently with what she said in the interview." Id. at 9. In rejecting defendant's contention, we concluded

> the trial court did not abuse its discretion in admitting the child victim's interview even though her trial testimony was not consistent with her earlier out-of-court statement. . . .
>
> Discrepancies between an out-of-court statement and live testimony can be, as defense counsel did here, argued to the jury as bearing upon the victim's credibility. They do not control the analysis of the totality of the circumstances to be made by the judge in evaluating whether the out-of-court statement was sufficiently trustworthy. . . .
>
> We also conclude that the trial court's decision to allow the videotaped interview to be played after the victim completed her testimony was not an abuse of discretion as it did not violate defendant's Confrontation Clause rights.
>
> [Id. at 14-15.]

We noted that defendant "had an opportunity to conduct meaningful cross-examination of the victim at trial but chose not to do so." Id. at 2. "Defendant, for what was evidently strategic purposes, simply chose not to cross-examine the victim while knowing that the videotape would be played after she testified." Id. at 22. We explained that defendant could also have "recall[ed] the victim as a witness after the tape was played" pursuant to N.J.R.E. 806. J.O.R., slip op. at 22. We pointed out that "[w]hat occurred here was not a violation of

5

defendant's Confrontation Clause rights, but rather a strategic decision made by defendant to not address the victim's earlier statement." Id. at 23.

Defendant filed a timely PCR petition that was supplemented by assigned counsel. Among other things, defendant asserted that his trial counsel was ineffective by failing to recall and cross-examine the victim after she "gave an inconsistent statement at trial," and failing "to investigate [the victim's] motive" for making the allegations. On September 12, 2023, the PCR judge issued an order and corresponding written opinion denying defendant's PCR petition without an evidentiary hearing. In his decision, the judge reviewed the facts and procedural history, applied the governing legal principles, and concluded defendant failed to establish a prima facie claim of ineffective assistance of counsel (IAC).

Specifically, the judge determined that "defense counsel successfully cross-examined the victim." The judge found that

> [t]he evidence ma[de] it clear that it was defense counsel's strategy not to call the victim back to the stand after the video of her statement was played for the jury.
>
> Furthermore, . . . defendant's bald assertion that defense counsel's failure to cross-examine the victim was further detrimental to defendant[] and directly resulted in his conviction[] is contradicted by evidence that defendant was found guilty based on the jury's

consideration of [the victim's] recorded statement . . . that he penetrated [her] vagina with his fingers.

Thus, the judge concluded "the strategic decisions made by defense counsel did not amount to [IAC]" or prejudice the defense to warrant PCR or an evidentiary hearing.

On appeal, defendant makes the following argument for our consideration:

> DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR COUNSEL'S FAILURE TO PROPERLY CROSS-EXAMINE THE STATE'S KEY WITNESS.
>
> . . . .
>
> (B) Counsel Was Ineffective For Procedurally Barring The Defendant From Being Able To Cross-Examine The State's Key Witness On Inconsistent Statements Pertaining To A Required Element Of His First-Degree Conviction.

We begin by setting out guideposts that inform our review. "We review the legal conclusions of a PCR judge de novo," State v. Reevey, 417 N.J. Super. 134, 146 (App. Div. 2010), but "review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing," State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "[W]here . . . no evidentiary hearing was conducted," as here, "we may review the factual inferences the [trial] court has drawn from the documentary record de novo."

State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (citing State v. Harris, 181 N.J. 391, 420-21 (2004)).

An evidentiary hearing is only required when (1) a defendant establishes "a prima facie case in support of [PCR]," (2) the court determines that there are "material issues of disputed fact that cannot be resolved by reference to the existing record," and (3) the court determines that "an evidentiary hearing is necessary to resolve the claims" asserted. State v. Porter, 216 N.J. 343, 354 (2013) (alteration in original) (quoting R. 3:22-10(b)); see also R. 3:22-10(e)(2) (providing "[a] court shall not grant an evidentiary hearing . . . if the defendant's allegations are too vague, conclusory or speculative"). Indeed, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." Brewster, 429 N.J. Super. at 401 (omission in original) (quoting State v. Marshall, 148 N.J. 89, 158 (1997)).

"To establish a prima facie case, [a] defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b). And, a defendant must make this showing "by a preponderance of the credible evidence." State v. Goodwin, 173 N.J. 583, 593 (2002). Rule 3:22-2

8

provides five grounds for PCR. Applicable here is defendant's contention of a "'substantial denial in the conviction proceedings'" of his "state or federal constitutional rights"; namely, his constitutional right to the effective assistance of counsel. State v. Preciose, 129 N.J. 451, 459 (1992) (quoting R. 3:22-2(a)).

To establish a prima facie claim of the denial of the effective assistance of counsel as contemplated under Rule 3:22-2, a defendant must demonstrate that the performance of counsel fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687-88 (1984), and adopted in State v. Fritz, 105 N.J. 42, 49-58 (1987), and that the outcome would have been different without the purported deficient performance. Stated differently, a defendant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.

To satisfy the first prong, a defendant must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. "[I]n making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance . . . ." Id. at 689. As such, a defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

"Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. For that reason,

> an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with [defense] counsel's exercise of judgment during the trial. The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt. As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal "except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of [a] fair trial."
>
> [State v. Castagna, 187 N.J. 293, 314-15 (2006) (alteration in original) (citations omitted) (quoting State v. Buonadonna, 122 N.J. 22, 42 (1991)).]

To satisfy the second <u>Strickland</u>/<u>Fritz</u> prong, "[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached." <u>State v. Chew</u>, 179 N.J. 186, 204 (2004) (citing <u>Strickland</u>, 466 U.S. at 694). This prong generally requires that a defendant establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. Failure to meet either prong of the two-pronged <u>Strickland</u>/<u>Fritz</u> test results in the denial of a petition for PCR. <u>State v. Parker</u>, 212 N.J. 269, 280 (2012) (citing <u>State v. Echols</u>, 199 N.J. 344, 358 (2009)). That said, "courts are permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without determining whether counsel's performance was constitutionally deficient." <u>State v. Gaitan</u>, 209 N.J. 339, 350 (2012) (citation omitted) (citing <u>Strickland</u>, 466 U.S. at 697).

Applying these principles, we reject defendant's contention that he received IAC and affirm substantially for the reasons stated by the PCR judge in his comprehensive written opinion. The record is clear that defense counsel was aware that she could recall the victim to the stand or cross-examine her on the inconsistency while she was still on the stand. Given that knowledge, defense counsel's decision was clearly strategic. <u>See</u> <u>People v. Foulkes</u>, 117

11

A.D.3d 1176, 1177 (N.Y. App. Div. 2014) (recognizing that vigorous cross-examination of a child sexual assault victim can have the undesirable effect of "alienating the jury"); see also John E.B. Myers, The Child Witness: Techniques for Direct Examination, Cross-Examination, and Impeachment, 18 Pac. L.J. 801, 899 (1987) ("When the cross-examiner succeeds in eliciting a number of inconsistencies from a child, the attorney must decide whether to let the loose ends dangle until closing argument, or to ask the ultimate question:  'So Billy, . . . it is possible that nothing happened at all, isn't it?'").

Although defendant asserts the burden should now be on his prior counsel to justify her trial strategy, he is mistaken.  The burden remains with him to show that this strategy was more than just a "strategic miscalculation[]." Castagna, 187 N.J. at 315.  He has failed to do so.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0534-23