**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0948-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALLEN D. REED, a/k/a
JULIUS REED, JUNIE
REED, ALAN REED,
and ANDRE SNYDER,

    Defendant-Appellant.

_____

Submitted May 29, 2025 – Decided June 3, 2025

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 16-08-2194.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (David J. Reich, Designated Counsel, on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Kevin J. Hein, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Allen D. Reed appeals from an October 6, 2023 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. After careful review of the record and the governing legal principles, we affirm.

I.

Following a seven-day jury trial, defendant was convicted of the first-degree murder of Edwin Davis, N.J.S.A. 2C:11-3(a)(1); first-degree armed robbery, N.J.S.A. 2C:15-1; first-degree felony murder, N.J.S.A 2C:11-3(a)(3); second-degree unlawful possession of a weapon without a permit, N.J.S.A. 2C:39-5(b); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and fourth-degree unlawful possession of hollow nose bullets, N.J.S.A. 2C:39-3(f). After appropriate mergers of several counts, the court sentenced defendant to an aggregate term of life imprisonment, subject to an 85% period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. Defendant appealed his convictions, we affirmed, State v. Reed, No. A-4067-17 (App. Div. Feb. 8, 2021), and the Supreme Court denied certification, State v. Reed, 246 N.J. 454 (2021).

2

Defendant's convictions stem from an early morning shooting on May 3, 2016, which resulted in Davis' death. For context, we detail the relevant facts and procedural history from the PCR record and our prior opinion.

On May 3, 2016, Davis awoke at around 5:30 a.m. to go to work. His fiancé heard him go downstairs a few minutes after 6:00 a.m., and at around 7:00 a.m., a neighbor found Davis' body in the backyard of his home. He had been shot one time in the chest, suffered massive blood loss, and died.

After the neighbor found Davis' body, Detective Mark Lee of the Camden County Police Department reviewed surveillance footage he obtained from the Crestbury Apartment complex located across the street from the row houses where Davis lived. The surveillance footage showed that at 4:45 a.m. on May 3, 2016, a minivan was on Olive Street, which is across from the row houses on Morgan Boulevard, where Davis' home was located.[1] An individual wearing dark clothes is seen exiting the minivan and the vehicle then drove away turning left onto Morgan Boulevard. The individual walked in the same direction and crossed the street towards the row houses on Morgan Boulevard.

---

[1] The Crestbury Apartment complex also maintained a license plate reader which, according to the testimony of Camden County Prosecutor's Office Detective Michael Sutley, also captured the minivan on Olive Street at 4:45 a.m.

A-0948-23

While he was at the complex reviewing the footage, Detective Lee looked out a window and noticed the same minivan drive by. Lee and a partner located the vehicle and, around 11:00 a.m., conducted a motor vehicle stop. The vehicle was a beige Chrysler minivan, which was being driven by its registered owner, Syia Strong. Defendant was a passenger in the front-seat of the van.

Strong lived in a nearby apartment with Rashawn Braxton and her four children. She had been dating defendant for about four months, and approximately two weeks before the shooting, defendant had moved into the master bedroom of her apartment. The officers detained Strong and defendant and transported them to the Camden County Prosecutor's Office.

Detective Sutley and another detective questioned Strong and defendant separately. Initially, Strong did not tell the detectives anything regarding the events of earlier that morning. However, after Detective Sutley accused her of being an accomplice to Davis' murder, she told them defendant was responsible.

Defendant was tried on the first six counts of the indictment.[2] At trial, Strong testified that at around 3:00 or 4:00 a.m. on the morning of May 3, 2016,

---

[2] Defendant was also charged with second-degree possession of a weapon by certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1). After the jury found defendant guilty on the aforementioned six counts, the State dismissed that charge.

4

she and defendant were "having some drinks" with a friend when defendant asked her to drive him to a friend's apartment in the Crestbury Apartment complex, which was less than a ten-minute drive from Strong's apartment. According to Strong, defendant was wearing dark clothing, including black pants and a black shirt. Strong said it was raining at the time.

Strong dropped defendant off in the middle of Olive Street, next to the Crestbury complex, then returned home to go to sleep. Strong testified that around 6:10 a.m., she was awakened by a phone call from defendant who asked her to pick him up where she had dropped him off. Strong drove to Olive Street but defendant was not there.

She then pulled to the side of the road, just off Olive Street, where her daughter had an apartment. She called defendant to let him know she had arrived. Defendant eventually appeared and entered the van. Strong said defendant was wearing the same dark clothing he had been wearing when she dropped him off, and that he was wet from the rain.

When they got out of the van at Strong's apartment, defendant told Strong he "had to shoot somebody." She asked him "who and why," and defendant told her he shot Davis. He said that when he told Davis to get on the ground, Davis

5 A-0948-23

had rushed at him. Strong started to cry and went upstairs to her apartment to tell Braxton. Defendant went into the master bedroom and got into bed.

Later, Strong was getting ready to leave to bring her children to school, drop Braxton off at work, and run errands. She went to the master bedroom and asked defendant if he was coming with her and noted he had changed his clothes and hung his wet clothes on the closet door. Thereafter, the police executed a search warrant at Strong's and defendant's apartment. They seized a dark, "moist knit hat[,] . . . a set of moist gloves," a pair of pants, a size large sweatshirt, a silver and black Smith & Wesson revolver, and five live hollow nose rounds in the firearm and one spent casing.

In his interview with the police, defendant acknowledged that Strong had dropped him off near the Crestbury Apartments at around 2:00 or 3:00 a.m. on the morning of May 3, 2016, but said he was there to visit the home of the mother of his children. He told the detectives no one answered the door when he knocked so he sat outside under a porch overhang for approximately three hours.

Defendant also said at one point he walked to Strong's daughter's apartment in the Crestbury complex. He told the detectives he hoped to see Strong because she sometimes drove her daughter to work in the morning. He said no one answered the door there either. Defendant stated while he was

A-0948-23

sitting on the porch outside the apartment, he heard a single gunshot in the direction of a park on Morgan Boulevard.[3]

Defendant first told the detectives he did not see anyone around the time of the gunshot. He later stated, however, that while he was sitting on the porch in the Crestbury complex after the gunshot, he saw a dark figure run by but did not know which direction that individual ran. He said he just saw the person in "dark clothing shoot by there." He said Strong picked him up about twenty minutes after he heard the gunshot.

Defendant said he did not know anything about the Smith & Wesson gun. He also stated that he did not own a hoodie, and he had not been wearing one on of the day of the shooting. Instead, defendant told the detectives the only things hanging on the closet doors in his room were his robe and a towel. He said that when he went to the Crestbury complex, he was wearing the same clothes he was wearing when he was arrested. He stated that he did not get wet, despite the heavy rain because he stayed under the overhang.

Defendant filed a timely PCR petition alleging ineffective assistance of counsel. In his counseled brief, defendant argued his trial counsel was

---

[3] Detective Sutley testified at trial a ShotSpotter system, which is designed to "notif[y] the police department if there's an activation of gunfire within the city," registered a single gunshot at 6:07 a.m.

<span>A-0948-23</span>

constitutionally ineffective by failing to investigate and prepare a third-party guilt defense.[4] Specifically, defendant maintained "video surveillance evidence proved that" Braxton was the more likely shooter given the fact he is taller than defendant.

According to defendant, he is "small in stature," standing at five feet five inches tall and weighing 145 pounds. Based on his height and weight, defendant maintained he could not have been the person who murdered Davis. In support of this claim, defendant noted the evidence at trial included a size extra-large sweatshirt[5] "that would be extremely large on [him]."

Further, defendant noted that Strong's minivan measured 67.9 inches tall, and a single frame from the surveillance footage showed "the alleged perpetrator

---

[4] Defendant also claimed his trial counsel was constitutionally ineffective by failing to call an alibi witness at trial. Because defendant has not raised that claim on appeal, we accordingly do not address it and deem that unbriefed argument waived. See Telebright Corp. v. Dir., N.J. Div. of Tax'n, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2024) ("[A]n issue not briefed is deemed waived.").

[5] Although defendant refers to the sweatshirt as a size extra-large, the PCR court and the State characterize it as a size large sweatshirt. According to the testimony of Camden County Prosecutor's Office Detective Joseph A. Gurcik, the police recovered "one black American Rag size . . . large, hooded shirt" from defendant's bedroom.

entering [Strong's minivan] and standing at least as tall as the vehicle. That evidence strongly suggest[ed] the perpetrator was at least 1.5 inches taller than [defendant]." Defendant's PCR counsel noted, however, that "candor require[d them] to acknowledge that the same individual [was] observed walking around the rear of the van and appear[ed] shorter in stature" than the vehicle.

In addition to his counseled brief, defendant submitted a certification in which he attested his "trial counsel failed to develop proof relating to third-party liability." Again relying upon the surveillance image in which the perpetrator appeared to be taller than Strong's minivan, defendant attested he "asked [his] attorney to investigate [his] claims and to build a defense that included a third-party guilt claim," but his "attorney did neither[,] with the result that [defendant] had no defense, and [he] was convicted of murder and related offenses."

On October 6, 2023, the PCR court heard oral arguments, denied defendant's petition, explained its reasoning in a comprehensive oral decision, and issued a conforming order that same day. After detailing the underlying facts and procedural history, the PCR court applied the two-part Strickland[6] test

---

[6] To establish ineffective assistance of counsel, a convicted defendant must satisfy the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984), by demonstrating: (1) counsel's performance was deficient, and (2) the deficient performance actually prejudiced the accused's defense. The

and concluded defendant failed to establish a prima facie case of ineffective assistance of counsel and, therefore, was not entitled to an evidentiary hearing.

The PCR court began its analysis by noting that defendant's arguments concerning his third-party guilt claim were "speculative." With respect to Strickland's first prong, the PCR court noted defendant's claims "neglect[ed] the abundance of evidence that implicate[d] . . . [him] in Davis'[] murder." Among the evidence the PCR court noted was: (1) the fact Strong's testimony, which placed defendant in the area of the crime, was corroborated by Crestbury's license plate reader and video surveillance footage; (2) "the [ShotSpotter] detected a single shot around the victim's residence, and a video showed the same individual who exited Strong's minivan running . . . while holding a silverish object in his hand"; and (3) phone records established defendant called Strong at 6:10 a.m., and she returned his call six minutes later.

With respect to the surveillance image which defendant contended depicted an individual taller than him, the court noted that argument was "undercut by common sense":

> While the height of the minivan . . . was 67.9 inches, that's not the same as the distance between the ground and the top of the opening of a side door on a

Strickland test has been adopted for application under our State constitution. See State v. Fritz, 105 N.J. 42, 58 (1987).

minivan. . . . [T]herefore, the idea that somebody who is only six inches [taller] than that had to bend down, or somebody who is only six inches shorter than that would not have had to bend down to get into a minivan, . . . the two things do not follow from each other.

As to the sweatshirt seized from defendant's bedroom, the PCR court found defendant's claim was also contradicted by the evidence presented at trial. Specifically, when conducting a search of defendant's apartment, the police recovered a wet pair of jeans, a size large wet black hooded sweatshirt, and a black knit cap which contained "black gloves and a holstered Smith & Wesson with five hollow-nose bullets in it and one discharged shell casing," which a ballistics expert who testified at trial stated came from the firearm that was used to kill Davis. The PCR court further noted that evidence corroborated Strong's testimony "that after she returned to her residence after picking up . . . defendant, he changed clothes and hung the wet dark clothing on the closet door in the bedroom."

Finally, the PCR court found defendant's claim the sweatshirt must have belonged to Braxton to be without merit. Although Braxton still lived in the apartment with defendant and Strong, the PCR court noted: Braxton had moved all his belongings to another room and defendant occupied the master bedroom where the evidence was found; defendant proffered no evidence as to how tall

11

Braxton was; and it was "not unusual for anybody . . . to wear a size clothing that's larger."

With respect to Strickland's second prong, the PCR court concluded that defendant failed to establish he suffered any prejudice because "[t]he third-party guilt theory [was] based . . . solely on conjecture. Therefore, the failure to pursue that theory could not have affected the outcome of a criminal trial that, by its nature, depends on facts, not conjecture."

Before us, defendant contends the PCR court failed to view the evidence presented in a light most favorable to him and "a remand is now necessary to afford [defendant] the evidentiary hearing needed to further substantiate his claim." With respect to the PCR court's findings regarding the surveillance image, defendant maintains "[t]he PCR court should not have summarily rejected the import of the evidence that the alleged perpetrator was taller than Strong's minivan." Because Braxton testified at trial that he is "more than six feet two inches tall," and defendant is "only five feet five inches tall," defendant argues "[o]ne may reasonably infer from this that the person seen bending down to enter the van on the video was Braxton or some other tall person."

Addressing the PCR court's finding that defendant's argument concerning the height of the van was "undercut by common sense," defendant contends it

12

"overlook[ed] the fact that the roof of the van, as depicted in the photograph contained in the minivan specifications, is relatively flat." With respect to trial counsel's alleged failure to investigate the possibility the individual in the image depicted someone other than defendant, he maintains the PCR court should have found trial counsel's failure met the first Strickland prong because the investigation "had the potential to establish that the person shown on the video surveillance was not [defendant]."

As to Strickland's second prong, defendant argues "the PCR court's conclusion that [he] could not establish prejudice in view of the video and phone records and Strong's testimony is also open to question" because "the possibility remains that Davis' murder was committed by someone else also in the area." Further, defendant maintains the evidence uncovered in his bedroom is not dispositive because Braxton had access to the bedroom and "had the ability to move each of those materials into that room in order to make it appear they belonged to [defendant]."

Defendant also contends Strong's and Braxton's testimony is "inherently suspect" because both had extensive criminal records and "an interest in keeping themselves out of jail and protecting the welfare of their children." Because "one cannot say with confidence that if [defendant's] counsel had conducted a

13

proper investigation, along the lines [defendant] has suggested, the jury verdict would have been the same," defendant argues he established a prima facie case of ineffective assistance of counsel and was entitled to an evidentiary hearing.

We reject all of defendant's arguments and affirm substantially for the reasons set forth in the PCR court's thorough and well-reasoned oral opinion. We provide the following additional comments to amplify our decision.

## II.

"[W]e review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)). "If the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." Ibid. (omission in original) (quoting Marshall, 148 N.J. at 158).

"[W]here no evidentiary hearing has been held, we 'may exercise de novo review over the factual inferences drawn from the documentary record by the [PCR judge].'" State v. Reevey, 417 N.J. Super. 134, 146-47 (App. Div. 2010) (alteration in original) (quoting State v. Harris, 181 N.J. 391, 421 (2004)). We

also review de novo the legal conclusions of the PCR judge. Harris, 181 N.J. at 415-16.

Simply raising a PCR claim does not entitle a defendant to an evidentiary hearing as a defendant "must do more than make bald assertions that [they were] denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, trial courts should grant evidentiary hearings and decide on the merits only if the defendant has presented a prima facie claim of ineffective assistance, material issues of disputed facts lie outside the record, and resolution of the issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013).

When petitioning for PCR, the defendant must establish, by a preponderance of the credible evidence, that they are entitled to the requested relief. State v. Nash, 212 N.J. 518, 541 (2013); State v. Preciose, 129 N.J. 451, 459 (1992). As noted, to establish a prima facie claim of ineffective assistance of counsel, the defendant is obligated to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced their right to a fair trial. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.

A-0948-23

Under the first prong of this test, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. As such, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689.

Under the "second, and far more difficult, prong," of the Strickland test, State v. Gideon, 244 N.J. 538, 550 (2021) (quoting Preciose, 129 N.J. at 463), a defendant "must show that the deficient performance prejudiced the defense." State v. O'Neil, 219 N.J. 598, 611 (2014) (quoting Strickland, 466 U.S. at 687). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Gideon, 244 N.J. at 550-51 (alteration in original) (quoting Strickland, 466 U.S. at 694).

A defendant has "a constitutional right to introduce probative evidence tending to establish third[-]party guilt." State v. Timmendequas, 161 N.J. 515,

620 (1999). To be admissible, such evidence must have "a rational tendency to engender a reasonable doubt with respect to an essential feature of the State's case." State v. Loftin, 146 N.J. 295, 345 (1996) (quoting State v. Sturdivant, 31 N.J. 165, 179 (1959)). However, the defendant need not show "a probability of a third-party['s] guilt," but only "proof capable of raising a reasonable doubt on the issue of [the] defendant's guilt." State v. Millett, 272 N.J. Super. 68, 100 (App. Div. 1994) (citing State v. Koedatich, 112 N.J. 225, 299 (1988)).

Additionally, "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." State v. Chew, 179 N.J. 186, 217 (2004) (quoting Strickland, 466 U.S. at 691). The "decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. If trial counsel "thoroughly investigate[d] law and facts, considering all possible options, his or her trial strategy is 'virtually unchallengeable.'" State v. Savage, 120 N.J. 594, 617 (1990) (quoting Strickland, 466 U.S. at 690-91). "But strategy decisions made after less than complete investigation are subject to closer scrutiny." Id. at 617-18. When raising a failure to investigate claim, a defendant "must assert the facts that an investigation would have revealed, supported by affidavits or

certifications based upon the personal knowledge of the affiant or the person making the certification." Porter, 216 N.J. at 353 (internal quotation marks omitted) (quoting Cummings, 321 N.J. Super. at 170).

Applying the aforementioned legal principles, we conclude the PCR court properly denied defendant's petition without an evidentiary hearing because he failed to demonstrate a prima facie case of ineffective assistance of counsel. With respect to the first Strickland prong, we agree with the PCR court defendant failed to establish trial counsel's performance was deficient by failing to investigate and develop a third-party guilt defense.

Despite defendant's reliance on the single surveillance image and the sweatshirt seized from his bedroom, we agree with the PCR court that the record supports the inescapable conclusion defendant's counsel's performance was not constitutionally ineffective for failing to investigate and develop a third-party guilt defense because the evidence relied upon by defendant was not "capable of raising a reasonable doubt on the issue of defendant's guilt." Millett, 272 N.J. Super. at 100 (citing Koedatich, 112 N.J. at 299). With respect to the surveillance image, as the PCR court astutely noted, "[w]hile the height of the minivan . . . was 67.9 inches, that's not the same as the distance between the ground and the top of the opening of a side door on a minivan," thus, it does not

necessarily follow that the individual depicted in the image was taller than the highest point of the minivan. Further, defendant's argument is belied by another image from the surveillance footage, which his PCR counsel acknowledged depicted the "same individual . . . walking around the rear of the van and appearing shorter in stature" than the minivan.

As to defendant's claim the sweatshirt seized from his bedroom was too large for him and must have belonged to Braxton, defendant offers nothing, but bald assertions Braxton could have planted the sweatshirt in his bedroom. Cummings, 321 N.J. Super. at 170. Additionally, as the PCR court pointed out, the fact the sweatshirt may have been large on defendant does not establish it did not belong to him. Indeed, as the PCR court noted, it is not unusual for an individual to wear clothing that may be too large for them. In addition, the sweatshirt was seized from defendant's bedroom along with other inculpatory evidence, such as the Smith & Wesson revolver and discharged shell casing.

Even if we accept defendant established Strickland's performance prong, which we do not, he nonetheless failed to establish "but for" trial counsel's purported error, "the result of the proceeding would have been different." Gideon, 244 N.J. at 551 (quoting Strickland, 466 U.S. at 694). The PCR court correctly determined defendant's contentions "neglect[ed] the abundance of

19

evidence that implicate[d] . . . [him] in Davis'[] murder." See id. at 556 (stating "the overall strength of the evidence before the factfinder is important in analyzing the second prong of Strickland").

Here, the State's case was exceedingly strong: Strong's testimony placed defendant in the area of the crime and was corroborated by Crestbury's license plate reader and video surveillance footage; the ShotSpotter detected a single gunshot at 6:07 a.m., and phone records established defendant called Strong at 6:10 a.m.; Strong testified defendant changed out of his wet clothing after returning to their apartment and hung his clothing on the closet door, which was corroborated when the police seized said clothing at his apartment; and the police seized a Smith & Wesson with five hollow nose bullets and one discharged shell casing from defendant's bedroom, which a ballistics expert testified came from the firearm that was used to kill Davis. In light of this evidence and defendant's comparatively weak proofs in support of his third-party guilt defense, we are satisfied he failed to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 550-51 (alteration in original) (quoting Strickland, 466 U.S. at 694). Finally, because defendant did not establish a prima facie case of ineffective assistance of counsel, the PCR court

did not abuse its discretion in denying his request for an evidentiary hearing. See Preciose, 129 N.J. at 462.

To the extent not specifically addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0948-23