**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited.  R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1327-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ARTURO I. ALOMAS,
a/k/a JAMAL WILLIAMS,

     Defendant-Appellant.

_____

Submitted May 27, 2025 – Decided July 15, 2025

Before Judges Smith and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-08-0560.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the briefs).

William A. Daniel, Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Arturo Alomas appeals the December 6, 2023 order denying his application for post-conviction relief (PCR) without an evidentiary hearing. After a review of the record and the controlling law, we affirm.

I.

We obtain the facts from our opinion in State v. Alomas, No. A-1055-18 (App. Div. Apr. 30, 2021) (Alomas I), certif. denied, 249 N.J. 105 (2021).

> In March 2016, Trencie Johnson was in a relationship with defendant. They lived together in the Mravlag Manor apartment complex, Building 30.
> Saturday, March 26th was Ms. Johnson's birthday, so that weekend Ms. Johnson and her friends and family members went out to celebrate while defendant stayed home and watched their two-month-old child. Johnson and friends went to a nightclub between 11 p.m. and midnight and left the club between 2 a.m. and 2:30 a.m. the next morning.
> Also on March 26th, Kadijah Hix attended a friend's party at Mravlag Manor in Building 36 that lasted from Saturday night to early Sunday morning. During the party, she had one beer. Around 4 a.m., Ms. Hix stepped outside the apartment to get some air. While outside, Ms. Hix saw defendant walking from the apartment he shared with Ms. Johnson. She observed defendant walking quickly, carrying something that looked like a bag in his hand. She saw the side and back of defendant's head at that moment, but not his face. Ms. Hix sold children's clothes to Ms. Johnson and defendant approximately eight times in the previous two weeks. From these previous sales, Ms. Hix was able to take note of defendant's head and face,

2

complexion, physical body shape, how defendant walked, and his mannerisms.

Later that day, during a phone conversation, Ms. Hix learned from her sister that "something happened" to Ms. Johnson. Ms. Hix told her sister she had seen defendant earlier that morning when she stepped outside of the party at 4:00 a.m.

The next day, March 27, 2016, two of Ms. Johnson's cousins and her mother went to Ms. Johnson's apartment. When they got there, they could not open the door, so they started knocking and calling Ms. Johnson's name. When they finally entered the apartment, they found Ms. Johnson laying on the floor with a bag over her face. There was a wire tied around her neck and duct tape used to restrain her wrists and feet. Defendant and the infant child were not at the apartment.

That same day, North Carolina State Trooper Denny Morgan noticed defendant's Dodge Magnum driving down I-85 because it had blue lights in the fog lamps. Trooper Morgan pursued defendant and eventually pulled him over. Defendant's driver side wheels were on the fog line. Trooper Morgan got on his vehicle's PA to tell defendant to move his car over. Defendant did not move over. Trooper Morgan moved his patrol car closer to defendant's before he got out of his patrol car. As Morgan emerged from his car, defendant pulled off and sped down the interstate. Trooper Morgan gave chase and caught defendant again. Once both cars stopped, he ordered defendant to get out of his car with his hands up. Defendant complied and Morgan handcuffed defendant. When Trooper Morgan checked the car, he observed a child inside. He notified the Department of Child Services to pick up the child. Further, Trooper Morgan discovered that this car was registered to Ms. Johnson.

Shortly after the chase, State Trooper Kevin Barringer arrived. Defendant gave him permission to remove the child from the car. While in the car Trooper

Barringer observed that the vehicle's cargo area was loaded to the ceiling with trash bags containing baby clothes, among other items. Barringer also saw a purse and two cell phones. Trooper Barringer used those phones to talk to defendant's mother and other individuals who were calling both phones. Barringer spoke to defendant's mother from his phone, while on one of the other phones Barringer talked to "various individuals, some female and at least one male."

[Id. at 1-5.]

In 2016, a grand jury indicted defendant for first-degree murder, N.J.S.A. 2C:11-3(a)(1) and/or (2). Defendant was initially represented by Thomas Russo, and later by Christopher Dunn. In June 2018, the trial court denied defendant's Wade/Henderson[1] motion to suppress Hix's out-of-court identification after a hearing. In July 2018, the trial court granted defendant's Miranda[2] motion to suppress statements made after his arrest in North Carolina.

On August 17, 2018, the jury found defendant guilty of first-degree murder. In October 2018, Judge Walsh sentenced defendant to seventy-five years in prison, subject to an eighty-five percent parole disqualifier pursuant to the No Early Release Act[3] (NERA).

---

[1] United States v. Wade, 388 U.S. 218 (1972); State v. Henderson, 208 N.J. 208 (2011).

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

[3] N.J.S.A. § 2C:43-7.2.

We affirmed defendant's conviction and sentence in <u>Alomas I</u>. In August 2022, the PCR court dismissed defendant's pro se PCR petition claiming ineffective assistance of counsel because defendant did not "set forth with specificity the facts upon which the claim[s] for relief [are] based," required by <u>Rule</u> 3:22-8. The PCR court also noted that defendant raised issues that were addressed in <u>Alomas I</u>. Defendant then filed an amended verified PCR petition, and PCR counsel submitted a brief in support of defendant's petition.

In his petition, defendant claimed trial counsel provided ineffective assistance by (1) failing to file a motion to suppress evidence seized from his vehicle during a warrantless search; (2) not objecting to Kadijah Hix's recorded out-of-court identification statement; (3) failing to object to testimony about his arrest and handcuffing in North Carolina; (4) not requesting a limiting instruction regarding his arrest; (5) failing to object to the State's claim during summation that the victim died at 4:00 a.m.; (6) not consulting with or presenting a forensic pathologist regarding time of death; (7) failing to present testimony from Rayvon Leverett (Leverett) who would have stated defendant planned his North Carolina trip before the murder; and (8) inadequately cross-examining defendant's mother about her knee surgery, which could have shown the trip was preplanned.

Defendant further argued that the cumulative effect of these errors constituted ineffective assistance of trial counsel. He also contended his appellate counsel was ineffective for (1) failing to challenge the trial court's ruling admitting Hix's out-of-court identification; (2) failing to argue that the court should have provided a limiting instruction about his arrest; and (3) not raising cumulative error. In supplemental filings, defendant argued that the testimony of Cosgrove, an investigator at the Union County Medical Examiner's Office, regarding the body temperature and the room temperature, reinforced his claim that trial counsel should have consulted a forensic pathologist about time of death. He asserted that the failure of the medical examiner to include Cosgrove's observations showed either that the examiner did not trust Cosgrove's testimony or that the time of death was indeterminate.

After argument, the PCR court denied defendant's petition without an evidentiary hearing in December 2023. In a cogent forty-page written statement of reasons, the trial court methodically and comprehensively addressed defendant's claims. Regarding the suppression issue, the court found defendant voluntarily consented to the cellphone search and lacked standing to challenge the handbag search. The court determined that defendant's personal papers were seized, not during a warrantless search, but pursuant to valid search warrants. Next, the PCR court rejected defendant's claims regarding Hix's recorded

6

statement, finding it was properly admitted under Rule 803(a)(3) and that she was subject to cross-examination. Similarly, the court found Trooper Morgan's testimony about the arrest was properly admitted in order to narrate the sequence of events, and that trial counsel made a strategic decision not to request limiting instructions to avoid emphasizing the arrest.

Moving to the time of death issue, the PCR court found the jury could reasonably infer the victim died around the time Hix saw defendant. The court noted that defendant's PCR expert pathologist, Dr. Slone, largely supported the State's theory that the victim died around 4:00 a.m., even while expanding the time window of death and acknowledging some uncertainty regarding when the victim died. Concerning the Cosgrove testimony argument, the court found that neither Cosgrove nor the medical examiner testified to a specific time of death, just a scientifically plausible time frame.

As to Leverett, the PCR court found that his testimony was not truly exculpatory and would not have changed the result given the overwhelming evidence against defendant. The court noted that through defense counsel's summation, the jury already had heard that defendant went to North Carolina to surprise his mother. Regarding the cross-examination of Corliss Childers, the court observed her testimony that defendant never told her he was coming to North Carolina already supported the defense theory of a surprise visit.

The PCR court concluded that since there was no ineffective assistance of counsel on any individual claim, there was no cumulative error. The court also rejected defendant's arguments about appellate counsel, finding that the issues defendant claimed should have been raised on direct appeal lacked merit.

In sum, the PCR court determined that defendant failed to establish a prima facie case of ineffective assistance under the Strickland/Fritz[4] test. It found that counsel's decisions were either reasonable strategic choices or would not have affected the outcome given the substantial evidence of guilt, including surveillance footage of defendant's movements, eyewitness testimony, defendant's possession of the victim's belongings, the victim's blood on his clothing, his flight from police, and the absence of forced entry to the apartment.

Defendant makes the following arguments on appeal:

I.

> AS PETITIONER HAD ESTABLISHED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL AND THERE WERE GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE, THE PCR COUR ERRED WHEN IT DENIED HIS PETITION WITHOUT AN EVIDENTIARY HEARING.

---

[4] Strickland v. Washington, 466 U.S. 668 (1984); State v. Fritz, 105 N.J. 42 (1987).

(1) Trial counsel's failure to file a motion to suppress evidence seized in defendant's vehicle during a warrantless search was prejudicial.

    (A) Defendant had a cognizable claim that the warrantless search and seizure of evidence seized in his vehicle must be suppressed.

    (B) The subsequent North Carolina and New Jersey search warrants for the Dodge Charger were constitutionally invalid as the warrant courts relied on tainted evidence to find probable cause.

(2) As time of death was disputed, trial counsel was ineffective by failing to consult with a forensic pathologist.

(3) Trial counsel was ineffective by failing to investigate and present the exculpatory testimony of Rayvon Leverett.

(4) Trial counsel's inadequate cross-examination of Corliss Childers about her medical history was prejudicial.

(5) Trial counsel was ineffective by failing to object and seek remedial measures when a State witness testified about defendant's arrest in handcuffs.

## II.

AS HIX'S STATEMENT WENT BEYOND THE IDENTIFICATION HEARSAY EXCEPTION AND IT WAS CUMULATIVE AND USED TO IMPERMISSIBLY BOLSTER THE CREDIBILITY OF THE STATE'S WITNESS, TRIAL COUNSEL'S FAILURE TO OBJECT WAS PREJUDICIAL.

A-1327-23

III.

APPELLATE COUNSEL WAS PREJUDICALLY INEFFECTIVE FOR FAILING TO RAISE CERTAIN COGNIZABLE CLAIMS ON DIRECT APPEAL.

(1) Appellate counsel's failure to challenge the trial court's ruling denying an evidentiary hearing and admitting Hix's out-of-court identification of defendant was prejudicial.

(2) The trial court failure to sua sponte provide a curative/limiting instruction related to defendant's arrest and restraint in North Carolina was prejudicial as it denied him a fair trial.

IV.

TRIAL COUNSEL'S CUMULATIVE ERRORS PREJUDICIALLY DENIED DEFENDANT EFFECTIVE LEGAL REPRESENTATION.

In a pro se supplemental brief, defendant raised the following issues on appeal:

TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO MOVE TO SUPPRESS EVIDENCE SEIZED FROM HIS VEHICLE.

(1) Defendant's consent to search his vehicle for his cell phone was not voluntarily made.

(2) The scope of defendant's consent to retrieve his cell phone did not extend to the search and seizure of Johnson's handbag and his personal papers.

(3) As the North Carolina troopers effectively acted as agents of New Jersey law enforcement when they seized defendant's personal papers, New Jersey's exclusionary rule must apply.

(4) Trial counsel was prejudicially ineffective by failing to file a Franks motion to challenge both the Dodge Charger North Carolina and New Jersey search warrants.

II.

A.

We begin by setting out guideposts that inform our review.

"We review the legal conclusions of a PCR judge de novo," State v. Reevey, 417 N.J. Super. 134, 146 (App. Div. 2010), but "review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing," State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "[W]here . . . no evidentiary hearing was conducted," as here, "we may review the factual inferences the [trial] court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (citing State v. Harris, 181 N.J. 391, 421 (2004)).

B.

We consider the relevant and well-settled legal principles that inform our analysis.

An evidentiary hearing is only required when (1) a defendant establishes "a prima facie case in support of [PCR]," (2) the court determines that there are "material issues of disputed fact that cannot be resolved by reference to the existing record," and (3) the court determines that "an evidentiary hearing is necessary to resolve the claims" asserted. State v. Porter, 216 N.J. 343, 354 (2013) (alteration in original) (quoting R. 3:22-10(b)); see also R. 3:22-10(e)(2) (providing "[a] court shall not grant an evidentiary hearing . . . if the defendant's allegations are too vague, conclusory or speculative"). Indeed, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to post-conviction relief, . . . then an evidentiary hearing need not be granted." Brewster, 429 N.J. Super. at 401 (omission in original) (quoting State v. Marshall, 148 N.J. 89, 158 (1997)).

"To establish a prima facie case, [a] defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b). Moreover, a defendant must make this showing "by a preponderance of the credible evidence." State v. Goodwin, 173 N.J. 583, 593 (2002).

12

When addressing an ineffective assistance of counsel claim, we follow the two-prong standard formulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 (1984) and adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987).

To prove ineffective assistance of counsel, the defendant must prove two things. "First, the defendant must show that counsel's performance was deficient." State v. Gideon, 244 N.J. 538, 550 (2021) (quoting Strickland, 466 U.S. at 687). Under this prong, the analysis is whether "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "Second, the defendant must have been prejudiced by counsel's deficient performance." Gideon, 244 N.J. at 550 (citing Strickland, 466 U.S. at 687). To prove this element, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Failure to meet either prong of the Strickland/Fritz test will result in the denial of a petition for PCR. State v. Parker, 212 N.J. 269, 280 (2012).

The defendant must establish, by a preponderance of credible evidence, that he is entitled to the requested relief. State v. Nash, 212 N.J. 518, 541 (2013). To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision."

13

State v. Mitchell, 126 N.J. 565, 579 (1992). The defendant must do more than make "bald assertions" of ineffective assistance. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

"Complaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy [of counsel]." Fritz, 105 N.J. at 54 (quoting State v. Williams, 39 N.J. 471, 489 (1963)). Courts must apply a "highly deferential" standard when reviewing counsel's strategic decisions. Strickland, 466 U.S. at 689. A court must reject a claim if it rests on allegations that "are too vague, conclusory, or speculative . . . ." Porter, 216 N.J. at 355 (quoting Marshall, 148 N.J. at 158).

We are mindful that, at this stage, it is important to examine the strength of the State's evidence. Gideon, 244 N.J. at 556. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 446 U.S. at 696).

## III.

We affirm substantially for the reasons expressed in the well-reasoned and comprehensive opinion of Judge Lisa Miralles Walsh, which meticulously

14

addressed each issue raised by defendant his PCR petition. We add the following brief comments.

We reject defendant's claim that appellate counsel was ineffective when it failed to challenge the trial court's admission of Hix's out of court identification. Appellate counsel raised the issue on direct appeal.[5] We addressed it in Alomas I, when we concluded there was "sufficient credible evidence to support the trial court's conclusion that Ms. Hix's photo identification of defendant was reliable." Alomas I, slip op. at 15. Because the issue was disposed of on direct appeal, it is barred from consideration in this PCR application. R. 3:22-5.

Defendant argues that both trial and/or appellate counsel's cumulative errors prejudicially denied him his right to effective assistance of counsel. We disagree. Cumulative error is "where any one of several errors assigned would not in itself be sufficient to warrant a reversal, yet if all of them taken together justify the conclusion that defendant was not accorded a fair trial, it becomes the duty of this court to reverse." State v. Orecchio, 16 N.J. 125, 134 (1954). However, when a "defendant alleges multiple trial errors, the theory of

_____

[5] Defendant's merits brief on direct appeal contained a specific point heading on this issue: Alomas' Conviction Should Be Reversed Because The Conviction Is The Result Of An Out Of Court Identification That Was So Impermissibly Suggestive As To Give Rise To A Very Substantial Likelihood Of Irreparable Misidentification. Alomas I, slip op. at 11.

cumulative error will…not apply where no error was prejudicial[,] and the trial was fair." State v. Weaver, 219 N.J. 131, 155 (2014). Our review of this detailed record reveals no ineffective assistance of counsel to us on any of the multiple issues raised by defendant. It follows that the cumulative error argument is wholly without merit.

Even if we were to find trial or appellate counsel was ineffective as to any of defendant's claims, we discern no nexus between counsel's alleged ineffectiveness and any trial outcome which would lead us to a finding of prejudice under prong two of Strickland. 466 U.S. at 688.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1327-23